David Eugene **BREEZE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 9646.

United States Court of Appeals
Tenth Circuit.

July 5, 1968.

Byron M. Gray, Topeka, Kan., for appellant.

Guy L. Goodwin, Asst. U. S. Atty. for District of Kansas (Newell A. George, U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, PICKETT, Senior Circuit Judge, and DELEHANT, Senior District Judge.*

DELEHANT, Senior District Judge.

On June 6, 1966, one Joyce Marie Michael and the appellant, David Eugene Breeze, each accompanied and represented by separate counsel theretofore appointed by a duly qualified United States Commissioner, for her and him respectively, appeared in open court, as from the clerk's court room minute sheets and otherwise, it appears, in Wichita, within the District of Kansas, and, after adequate instruction, each of them, within the provision of Rule 7(b), Federal Rules of Criminal Procedure, both orally and in writing, and with the court's approval, waived prosecution by indictment, and consented to prosecution by information. Thereupon, a single information was filed in the office of the Clerk of the United States District Court for the District of Kansas in Case No. W–Cr.–758 therein, against both Joyce Marie Michael and the present appellant, David Eugene Breeze as defendants. Therein, it was charged that:

"Continuously from on or about March 15, 1966, until on or about May 6, 1966, in the District of Kansas and within the jurisdiction of this court,

JOYCE MARIE MICHAEL and
DAVID EUGENE BREEZE

wilfully did harbor, conceal and assist James Warren Michael, who had deserted from the Armed Forces of the United States, knowing him to have deserted therefrom, in that they obtained and rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection, sustenance and services as might prevent his discovery and apprehension, in violation of 18 U.S.C. 1381, 2."

* Sitting by designation from the Eighth Circuit.

After the filing of such information, and still on June 6, 1966, each of the defendants named therein, including particularly the appellant, David Eugene Breeze, again appeared with such counsel in open court at Wichita, and was duly arraigned upon the charge against her or him, as the case may be, made in such information; and such defendants, including the appellant, David Eugene Breeze, tendered separate and individual pleas of NOT GUILTY to said charge, which pleas were, by that court, severally accepted.

A single Motion for Severance of those two defendants for trial was served and filed in behalf of both defendants, also on June 6, 1966. It was, initially, and on December 7, 1966, denied and overruled. But, thereafter, pursuant to a motion by the defendant, David Eugene Breeze, for reconsideration of that ruling, and on February 10, 1967, responsive to an intervening factual occurrence not presently vital, that motion was sustained, and in consequence of that ruling separate trials of the two defendants were had, and were conducted thereafter, infra.

Trial before a jury of Joyce Marie Michael was had at Topeka, Kansas on February 13, 1967; at the conclusion whereof, and on the same day, the jury's verdict therein was returned and accepted finding her to be guilty as charged. On March 13, 1967, upon that verdict, judgment of guilty was entered as against Joyce Marie Michael, and the imposition of sentence was suspended, and Joyce Marie Michael was placed on probation, for the period of three years. She made timely appeal to this court, and, on the submission of such appeal, this court, composed of the three judges presently acting herein, has heretofore entered an order and judgment reversing and remanding for a new trial the case as against her, see Michael v. United States, 10 Cir., 393 F.2d 22.

Trial of David Eugene Breeze, hereinafter generally called the appellant, was had before a jury in the United States District Court for the District of Kansas, at Topeka, Kansas, on April 5, 6 and 7, 1967. At its completion the jury therein found and returned, as against the appellant, David Eugene Breeze, a verdict of guilty, which was received and filed. The appellant timely served and filed a motion for a new trial. That motion, upon its submission on May 12, 1967, was overruled by the trial court. Thereafter, and on May 19, 1967, the appellant appeared in open court for sentencing. The court then suspended the imposition of sentence and placed the appellant upon probation for the period of two years. The present appeal ensued, and it was taken in due season, and has been submitted to this court.

Preliminarily, this court, as it did in Michael v. United States, supra, and for reasons essentially indistinguishable from those therein declared, signifies its opinion that, notwithstanding the suspension of sentence upon, and grant of probation to, David Eugene Breeze, he is entitled to prosecute his present appeal. It is considered unnecessary to amplify, or further to support, that view.

It is here observed that in some respects this case may be considered in this court as a companion case to Michael v. United States, supra. It is true, supra, that the two cases here arose out of a single information filed in the District Court, wherein both of the defendants—appellants here—were identically accused of the commission of a single, and the same, offense, supra. Yet, they were eventually tried separately, supra; and in those several trials, each defendant-appellant was represented by a different attorney, for her or him appointed by the Commissioner under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A Consequently, each of the two appeals has been presented before this court on its own record; and those records are not completely identical. Nevertheless, since both of them arose out of evidence touching happenings involving the same two people, through a short interval of time, and within a narrow territorial area, their basic factual ingredients do not differ widely. And this court has

undertaken presently to accord due consideration both to the disparities, and to the similarities or identities between the two records, and to make disposiiton of each case, including the present one, upon its own record.

On the present appeal, the appellant, at the outset, contends that the trial court erred in its rejection of his motion tendered at the close of the evidence for an instructed verdict of not guilty. The motion thus identified was made in a single sentence. It was in this language: "the defendant at this time moves the court for an instructed verdict of acquittal." It did not specify or paticularize the ground, or grounds, whereon it was premised. Undoubtedly, it was adequate, despite its lack of specificity, to tender both or either of the positions, (a) that the information was insufficient to allege the commission by David Eugene Breeze of a criminal offense against the United States; and (b) that the evidence was insufficient to support a conviction of the offense, if any, adequately alleged in the information against David Eugene Breeze.

The information has already been quoted verbatim herein, and it is not presently being repeated. It was, too obviously for doubt, prepared and filed with a view to conformity alone to the second unnumbered paragraph of Title 18 U.S.C., Section 1381. So far as it has present pertinence, that paragraph of the cited section of the code contains this language:

> "Whoever harbors, conceals * * * or assists any such person who may have deserted from such service, knowing him to have deserted therefrom, * * * shall be fined not more than $2,000 or imprisoned not more than three years, or both."

From the also unnumbered paragraph immediately preceding the last quoted unnumbered paragraph, it is manifest that the words, "any such person," supra, allude solely to "any person in the Armed Forces of the United States, or who has been recruited for service therein;" and that the words, "deserted from such service," allude solely to "deserted from service in the Armed Forces of the United States."

■ It is, therefore, unquestionable that the information in the present case unmistakably accused each and both of the two defendants therein named, including the present appellant, of the violation of the quoted language of the second unnumbered paragraph of Title 18 U.S.C. § 1381, within the interval beginning on or about March 15, 1966 and ending on or about May 6, 1966, i. e. approximately fifty-two days; and charged that such violation occurred, "in that they obtained and rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection, sustenance and services as might prevent his discovery and apprehension." This court, therefore, regards the information as invulnerable to a motion for dismissal based upon the asserted essential inadequacy of the information itself.

Moreover, as will presently appear from the consideration herein of the alleged insufficiency of the evidence to support the verdict of guilty, this court is of the opinion that the evidence upon the trial, if believed, was and is sufficient to warrant a finding by the jury that the appellant, David Eugene Breeze, within the interval embraced in the information, rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection and services—and, quite narrowly, sustenance—"as might prevent his discovery and apprehension," and thereby "harbored, concealed and assisted James Warren Michael." The opinion of this court thus circumscriptorily reflected, does not, either expressly or implicitly, signify a conclusion by this court either that at the time involved, James Warren Michael was guilty of desertion from the Armed Forces of the United States, or that the appellant, David Eugene Breeze, knew that he was so guilty, if guilty he were. Those are questions vitally important, indeed, the prime ingredients underlying any possible guilt on the part of the accused defendants, and each or either of them,

and of which, so far as they are presently relevant, separate consideration is later herein advanced.

This court, accordingly, is persuaded that the trial court was not in error in refusing (a) to direct a verdict of not guilty, in behalf, or upon the motion, of the defendant-appellant, David Eugene Breeze, or (b) construing such motion, rather, as seeking a dismissal of the action by the trial court, to grant and sustain the motion and dismiss the action.

Proceeding on the appellant's contention that the evidence was insufficient to support the verdict of guilty against the appellant then on trial, the court reserves for the present the issues whether at the time named in the information, (a) James Warren Michael had in fact deserted from the Armed Forces of the United States; and (b) the defendant, David Eugene Breeze knew James Warren Michael so to have deserted from the Armed Forces of the United States. Those issues, and the evidentiary problem in which, on the trial of the appellant, they became and were involved, are entitled to, and are herein accorded, separate consideration, infra. Attention is, therefore, presently given to the alleged fatal inadequacy of proof upon the trial that David Eugene Breeze "did harbor, conceal, and assist James Warren Michael * * * in that he obtained and rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection, sustenance and services as might prevent his discovery and apprehension."

Let it be repeated that, in its information, the United States charges that, continuously within the two specified dates, i. e. for an interval of fifty-two days, both Joyce Marie Michael and David Eugene Breeze did harbor, conceal and assist James Warren Michael, in that they obtained and rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection, sustenance and services as might prevent his discovery and apprehension. Mark that the accusation was and is made impartially against both of the named defendants,

thus, is broad enough to accuse both and each of them of all and each of the things by it charged. They are, both and identically, accused. No conspiracy between them to violate the law, or for any other purpose, is alleged or even intimated. Neither of them is either charged as the prime offender, or accused of being only a "principal in second degree" as an aider or abettor. The information contains no explicit assertion that either of the named defendants aided or abetted the other in the commission of any act or acts within the definition of that pleading. That is not made less true by reason of the parenthesized reference "(18 U.S.C. 1381, 2)" or the insertion of those parenthesized words and figures in the conclusion of the information. Title 18 U.S.C., Section 2, is, indeed, in this language:

"2. PRINCIPALS.

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

██ But that language neither defines nor denounces as criminal any act or omission which, without it, would have been lawful. It is rather a statutory canon defining an ingredient of criminal responsibility generally, than the definition by law of any crime. It simply provides for the punishment as a "principal" of any one who, by his conduct brings himself within the reach of any of the many suppositions included in any phase or phases of either of the foregoing two paragraphs. Moreover, the appending in parentheses of the statutory citation, supra, to an otherwise complete information or indictment, without more, itself charges no actionable crime. Manning v. Biddle, 8 Cir., 14 F.2d 518; Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335. In the present context,

manifestly, nearly all of Title 18, Section 2(a), and, in its entirety, Section 2(b), are quite irrelevant. It is certain that there was no allegation or evidence before the trial court that David Eugene Breeze "counseled, commanded, induced or procured the commission of any offense against the United States" (2a), or "caus[ed] an act to be done which if directly performed by him or another would be an offense against the United States" 2(b). There remains the language of section 2(a) to the effect that "whoever commits an offense against the United States or aids (or) abets * * * its commission is punishable as a principal." Let it be supposed that the United States, by a presumptuous resort to some misbegotten "shorthand pleading," intended, through the wholly unexplained addition of the figure "(2)" to the clearly pertinent and complete citation of "(18 U.S.C. 1381)", to add something to the categorical and plain language of the accusatory body of the information. But what? Who aided or abetted whom, and in what respect? Was it James Warren Michael's asserted desertion or his alleged harboring by Joyce Marie Michael, or David Eugene Breeze that was aided and abetted? David Eugene Breeze had a right, which was not accorded, to an answer in the body of the information to this question, and to its exposure in the information through the employment of plain, unambiguous and unequivocal language. Crypticity may, in one or another context, possess some virtue, but only doubtfully, if at all, in the realm of legal charging pleading in criminal litigation. In that field the charging pleader is not only expected, but required, clearly and lucidly to spell out his accusation, and not to remit the defendant for its comprehension to some awkward turn of intuition, or to a mere guess at the implication of a naked, and multiplicitous, statutory citation unexplained by any illuminating verbal specification.

Undoubtedly, Title 18 U.S.C., Section 2, through its presence in the criminal code of the United States, whether formally identified by pleading or not in an indictment or information, has this presently pertinent mission. It admonishes him who is tempted to offend that if he aids or abets the commission by another of an offense against the United States, he will himself be guilty of, and punishable for, that offense as a principal. He is charged with knowledge to that end, whether or not he actually possesses it. And it so instructs government prosecutors, as well as all defense counsel and judges, both of the trial courts and of appellate tribunals, and jurors, against the day when their respective offices may require them to administer the language of the section.

■ After full and careful examination of the pleadings and of the record before the trial court in this case, specifically, in the separate trial of the appellant, David Eugene Breeze, this court is persuaded that there was competent evidence before the trial court and the jury, sufficient and adequate, if credited by the jury, and by such jury accorded a probative significance most rationally favorable to the government, to support a finding by the jury that David Eugene Breeze "did harbor, conceal, and assist James Warren Michael," in that he (David Eugene Breeze) obtained and rendered—at the least, rendered—to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection and sustenance (with the reservation shortly made) and services, as might prevent his (i. e. James Warren Michael's) discovery and apprehension, and thereby harbored, concealed and assisted James Warren Michael. That evidence will not be dissected and discussed item by minor item; but its principal features, by this court believed to be significant, will now be broadly recalled.

In passing, this court observes that, upon the trial, the trial judge in his charge instructed the jury touching the significance, in the context of the instant prosecution, of the terms, "conceal" and "harbor". Careful consideration has by this court, been accorded to that aspect of the trial judge's charge; and its

definitions of those terms are regarded as essentially correct and readily intelligible.

On February 16, 1965, James Warren Michael, who had theretofore served under enlistment in the United States Navy for some eight years, reenlisted in such United States Navy. Thereafter, while at Treasure Island, San Francisco, California, he received from competent naval authority an order to report for duty at Travis Air Force Base not later than "1800 April 24, 1965." He did not so report. Instead, he and his wife, Joyce Marie Michael, traveled by automobile starting, as it appears, late in May, 1965, to the vicinity of Cherryvale, Kansas. They continued thereafter to reside in the general area of Cherryvale, at least through May 6, 1966. This is not to say that James Warren Michael remained at such residence constantly during that interval. But it does mean that that was his general place of habitation during that period.

As of October 22, 1965, under the name and style of "Jim and Joyce Michael," they obtained from, and were granted by, the Kansas State Hotel and Restaurant Board, a license to operate a restaurant under the name, TRUCKERS INN, on Route 2, Cherryvale, Kansas, said to be located some three miles south of Cherryvale, from October 15, 1965 through December 31, 1965. Also in October or November, 1965 (almost certainly in October), James Warren Michael and Joyce Marie Michael, at a drug store in Cherryvale, operated by one Thomas Porter, negotiated for and obtained, expressly in their own proper names and right, from Mr. Porter a lease of a small farm, about thirty acres in extent, with improvements, inclusive of a dwelling house, located on Rural Route 3, some six miles northeast of Cherryvale. That dwelling house was equipped with a telephone; and in the Cherryvale, Independence, Neodesha (Kansas) telephone directory of Southwestern Bell Telephone Company, James Warren Michael procured the listing of that telephone and of its call number, in the name of "MICHAELS, JIM, R.F.D 3—Number ED. 6–3060."

Meanwhile, Joyce Marie Michael, at a date not exactly established, had obtained, and then had, employment, as a bar maid, or attendant, in a tavern, in nearby Parsons, Kansas. There, some time in January, 1966, David Eugene Breeze, then barely, if at all, and probably not quite, nineteen years of age, and a resident of Parsons, as a customer of the tavern, met Joyce Marie Michael. Out of that meeting arose an acquaintance and some personal attachment, infra, between Joyce Marie Michael and the appellant. Shortly after the meeting, but at a date not exactly established, though probably early in April, 1966, and with a view to his probable occupancy until his anticipated induction into military service of the United States on May 11, 1966, the appellant moved into, and, until his arrest during the early morning of May 6, 1966, infra, resided in, the Michael home located on Route 3, et supra et infra. It was at, or very shortly after that removal that the appellant first met James Warren Michael, whom he had not theretofore known. Residing then and for some time thereafter in that house were James Warren Michael, Joyce Marie Michael, David Eugene Breeze, a daughter, approximately seven years of age, of the Michaels, or of one of them (there is language in the record that may support the improbable supposition last intimated), and during at least a part of the time, one Patricia Riedle, a girl who served in the capacity of a "baby sitter", or unskilled attendant.

Admittedly, it is difficult, if not actually impossible, from the evidence, to reconstruct with certainty the pattern of living, during the critical interval, that obtained in the Michael residence on Route 3, Cherryvale. There is testimony in the record, before this court, of the trial in the District Court, now under review, from which it may be found that at the Parsons tavern, even before Patricia Riedle had started to work in the Michael home, she was, by Joyce Marie Michael, introduced to David Eugene

Breeze, who was then identified by the introducer as the husband of Joyce Marie Michael, and that Patricia Riedle supposed him to be Joyce Marie Michael's husband, until, upon Patricia Riedle's coming early thereafter to the Michael residence to live and work, she personally met and was introduced to James Warren Michael; that when Patricia Riedle first met David Eugene Breeze and when, later, she went to live in the Michael home, the appellant wore and was raising no beard but that he started to grow one somewhat, but briefly, later; that when, on moving to the Michael home, Patricia Riedle first met James Warren Michael, he had just started to grow a beard; that Joyce Marie Michael, on the disclosure of her real husband to Patricia Riedle, told the latter that she (Joyce Marie Michael) "was telling everyone that he" (David Eugene Breeze) "was her husband to hide James Warren Michael;" that, from time to time, James Warren Michael, when persons approached, or came to, the Michael home, either secreted himself on a shelf in a closet in the house, or disappeared from observation to a nearby timber area on a hill, shortly distant from the family house by departure through the basement or furnace room, and out of a back door; and that, with apparent regularity, a bizarre sleeping arrangement prevailed in the Michael home, whereunder James Warren Michael, Joyce Marie Michael and David Eugene Breeze, together and concurrently, occupied, and slept in, the same bed. There is evidence, too, that on a few occasions during the interval set out in the information, David Eugene Breeze accompanied James Warren Michael in the latter's automobile when Michael called for service at an oil and gasoline service station and at a store, but not that David Eugene Breeze paid for such purchases as were then made; and that on two or three occasions, in the presence of Patricia Riedle, David Eugene Breeze handed Joyce Marie Michael a small quantity—"a few dollars"—of money, saying "he had a few dollars and he would help out," and

on one or two of such occasions, those two persons left the home and shortly returned with some groceries, which were later consumed by all of the occupants of the house. In this connection, as a witness, David Eugene Breeze denied both his provision of any food for the household, and his possession of any money wherewith he could so have provided, and also denied his giving of money to either of the Michaels for any purpose. Touching that subject, and by way of confirmation, he testified: "I got fired from my job, and I had no money," and "I had one dollar when I went there, and I had one dollar when I returned." There is also evidence that while he was living in the Michael home, the appellant grew or started to grow a beard, not of substantial luxuriance. And the government argues, and upon the trial contended, that his course in that behalf was, by him and Joyce Marie Michael, attributed in connection with other people to an expressed design thereby to promote confusion between him and James Warren Michael in the thinking of those persons who might see him. Absurd—at the most significantly, far fetched—though that position be, it was probably grist for the trial jury's mill.

It is clearly proved, and appears not to be denied by the appellant, that on several occasions during the interval of his residence in the Michael home, including the apprehension in the early morning of May 6, 1966 of James Warren Michael, Joyce Marie Michael and David Eugene Breeze, the appellant, David Eugene Breeze, in response to direct inquiries, told sundry persons, including Raymond Radford, Federal Bureau of Investigation special agent (either or both), that he did not know of the whereabouts of James Warren Michael, or that James Warren Michael was not then living, or otherwise present, in the Michael home at Route 3, Cherryvale, Kansas. It is equally proved and appears not to be denied that when they were made such statements were both factually untrue and consciously false.

And there is express evidence, submitted to the jury, that the appellant and Joyce Marie Michael had arrived at an understanding that he would make such answers in substance to questions of that character, if and when they should be tendered.

There was also before the trial court evidence preserved for this court that, within the interval specified in the information, supra, or during a part of such time, the appellant was amorously infatuated with Joyce Marie Michael, and entertained some hope of his eventual marriage with her; and that to some persons, Joyce Marie Michael actually introduced him as her husband, supra, and to some people signified on her part an intention to marry him at such time as that should legally become and be possible. Of course, any such representation of intention might have been true, or even consciously false. And this court considers it unnecessary and purposeless to speculate as to whether she then actually intended eventually to marry him.

Regarding, in its totality, that evidence concerning David Eugene Breeze's activity and conduct thus only partially reflected, this court is convinced that such evidence, if, by the jury, believed, and granted the signification most favorable to the prosecution, was adequate to support a finding by those triers of the facts that he rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection and services, and—in a valid and rational sense—sustenance, of such character as might prevent his discovery and apprehension, and that he did thereby harbor, conceal and assist James Warren Michael.

■ Admittedly, the proof of the appellant's provision for James Warren Michael of "sustenance," as that word is commonly understood, is not either absolute or massive. The evidence of his bestowal of money, in trivial amount upon James Warren Michael, or upon Joyce Marie Michael, wherewith vehicular gasoline or food or other "nourishment" for the household might be pro-

cured, was scant and was disputed directly by the appellant in his testimony; and its testimonial credibility was not at all unchallengeable. But those were questions for the jury. And, after all, while the word "sustenance" embraces the "means of support; now, often food; also nourishment," its significance is not thus materially limited. It includes also and more broadly "that which sustains, or gives support, strength, etc." Its Latin source, the verb, "sustineo" primarily means "I hold up" or "I keep from falling." There is, it will readily be recognized, venerable authority for the thesis that "man does not live by bread alone." In life's ultimate crisis, man has been poetically celebrated as "sustained and soothed by an unfaltering trust." He may be sustained—and that is the critical conception—by the provision of things of the spirit, especially by companionship and sympathy, not solely by groceries.

■ Finally, while the information charged that the appellant harbored, concealed and assisted James Warren Michael by rendering to him "protection, sustenance and services," it was not necessary that all of those sources of cooperation so conjunctively identified be proved. Proof of the rendition of one or more, though less than all of them sufficed if, in point of fact, such limited rendition was designed or calculated to, or actually did, prevent the discovery or apprehension of James Warren Michael. This court concludes that the extent and details of David Eugene Breeze's activities within the interval and area involved, and their impact, if any, upon the position of James Warren Michael, presented a problem for the trial jury under proper instructions by the trial judge, and that such instructions were correct to the extent that they had to do with the subject matter of this sentence.

In the solution of that problem, the jury had the right to consider the untrue denial by the appellant of his knowledge of the whereabouts of James Warren Michael, and of the latter's presence in

the home at earlier times, and even in the morning of the arrest. Though not, itself, proof of the appellant's harboring of James Warren Michael, such false statements may have been, and probably were, instructive on the score of Breeze's wilfulness or intent, or of both of such attitudes.

█ The appellant argues, upon the premise that the entry in the morning of May 6, 1966, by the officers into the Michael home was unlawful, that the trial court erred in admitting evidence procured by those officers at the time of, or as an incident to, such entry. A like contention was advanced before this court in Michael v. United States, supra, upon the record before the court in that case. It is quite true that the records severally made in the District Court in the separate trials of Joyce Marie Michael and David Eugene Breeze are not identical. But, upon the instant point, those records are substantially indistinguishable. They deal with the same official entry, and with the concurrent apprehension or arrest of the same three people. It is quite immaterial that in Michael v. United States, supra, the court was concerned with the impact of the entry and its details upon the apprehension of Mrs. Michael, while it is presently dealing with such impact upon the concurrent apprehension of David Eugene Breeze. In Michael v. United States, supra, after extended recollection of the factual underpinning of the entry and the ensuing arrest of Mr. and Mrs. Michael and David Eugene Breeze, this court sustained the legality of such entry and arrests, and also concluded with the following sentence:

> "It may be added briefly that the conclusion already announced supportive of the legality of the arrests and of the entry into the Michael residence, also prompts this court to the view that such information (or) evidence as ensued or was discovered or confirmed, upon such entry was incidental to a lawful entry and arrest, and was properly received upon the trial."

This court is equally convinced of the admissibility in this case of comparable evidence as against David Eugene Breeze concurrently and indistinguishably come by.

The appellant then, and not altogether unrelatedly, contends that the court erred in admitting "statements" of the appellant himself made prior to the appointment of counsel in his behalf, but after his apprehension and arrest. That challenge seems to be aimed not at "statements", in the plural number, but rather at a statement in the form of David Eugene Breeze's part in an oral conversation with Federal Bureau of Investigation Special Agent Radford, held after Breeze's arrest. By way of foundation for the introduction of Radford's recollection of the conversation, Radford, under interrogation, narrated the "prequestioning" caution which he claimed to have imparted to David Eugene Breeze in the early morning of May 6, 1966. Radford in that foundation, stated that he had advised Breeze that he did not have to talk with Radford, or to make any statement; that anything he might then say would be usable in court against him; that he had a right to call, or to make contact, or to consult, with, an attorney. Upon further questioning during the trial, Radford produced a very brief memorandum which he said he made immediately after the interrogation, which did not include a mention of advice touching the right to representation by counsel. Then, after a colloquy in open court between counsel and the trial judge, during which mention had been made of the want, up to that time, of any testimony by Radford that he had also told Breeze that if he were unable financially to procure the services of an attorney, an attorney would, on his request, be appointed for him without expense to him, Radford, at the request of counsel for the plaintiff was promptly returned to the stand for redirect examination. He then, under questioning, reiterated his testimony that he had advised Breeze of his right to procure and have the services of an attorney, and also testified that he had fur-

ther told Breeze that if he were financially unable to procure and pay for the services of counsel, counsel would, if he requested, be obtained and designated for him.

Upon this appeal, the appellant, after quotation from that redirect examination, argues thus:

"The questioning of Appellant took place on May 6, 1966; the *Miranda* decision was handed down some six weeks later on June 13, 1966. Thus, the District Court accepted not only the addition of the oral testimony on re-direct to supplement the written memorandum, but also, addition on re-re-direct of the amazing claim that the FBI agent had foreseen the *Miranda* decision by six weeks to supplement his testimony on redirect. There is no occasion to characterize this testimony for what it seems to us clearly to be. We do suggest it was improper for the District Court to accept it to enlarge the contents of the written memorandum. It was error to admit evidence of statements made by Appellant at this questioning."

The implication of the argumentative language just quoted may not by this court be allowed to stand unchallenged. For Miranda v. State of Arizona, 384 U. S. 436, 483 et seq., 86 S.Ct. 1602, 16 L.Ed. 2d 694, itself, preserves in the opinion of the Supreme Court information to the effect that during some time before the deliverance of the *Miranda* opinion, the Federal Bureau of Investigation was pursuing the practice which Agent Radford in his redirect evidence professed to have followed, supra. Radford's testimony, therefore, was not, and is not, vulnerable to the inference to which counsel for the appellant, thus gratuitously, would have this court adhere.

■ In any event, this court considers that the reception of the evidence so criticized reflects a ruling by an experienced trial judge upon an evidentiary question that is within the range of his proper appraisal and discretion. The sworn testimony of Agent Radford was entitled to fair preliminary evaluation on the score of its credibility, to be arrived at by the trial judge. It received such appraisal. Moreover, in the context of recent years, it is far from incredible. Miranda v. State of Arizona, supra, came as a sobering, and rationally remedial, deliverance, but not as a surprise to persons who had long observed the development of the National criminal law and practice. Finally, though, once admitted in the discretion of the trial judge, the credibility of that testimony, and its probative significance, were for the jury.

It is, by the appellant in this appeal, contended that the trial judge erred in giving the court's Instruction No. 6 to the jury. In that instruction, the judge, first, quoted verbatim both of the unnumbered paragraphs of Title 18 U.S.C. Section 2, supra, (which is now recalled but not again quoted), and thereto subjoined the following language:

"Every one who thus willfully participates in the commission of a crime may be found to be guilty of that offense. Participation is willful if done voluntarily and purposely and with specific intent to do some act the law forbids, or with specific intent to fail to do some act the law requires to be done; that is to say, with a purpose either to disobey or to disregard the law."

Theretofore, and in Instruction No. 2 of the charge, the trial judge had quoted in its entirety the information in this case, (editorially and properly limited to its charge against the appellant). And, immediately before giving Instruction No. 6 the trial judge had given to the jury his instruction No. 5 in the following language:

"In this information, the defendant in this case is charged with violation of 18 U.S.C.A. Section 1381 and 18 U.S. C.A. Section 2. Section 1381 reads in pertinent parts, in the words of the statute as follows:

'Whoever harbors, conceals * * * or assists any such person who may have deserted from the Armed Forces

of the United States, knowing him to have deserted therefrom.'

shall be guilty of an offense against the law of the United States."

The trial judge then proceeded to the giving of his Instruction No. 6, already identified and disclosed, supra. And that was followed by his imparting of Instruction No. 7 in this language:

"The essential elements of the offense charged in the Information are:

1. Harboring or concealing of any person, or the aiding in the harboring, concealing or assisting any person

2. Who had deserted from the Armed Forces of the United States

3. And that the defendant knew such person to have deserted from the Armed Forces of the United States.

The burden is upon the prosecution to prove beyond all reasonable doubt every essential element of the crime charged."

Much later in the charge to the jury, the trial judge imparted to the jury the court's Instruction No. 16, of which the following is a copy:

"The defendant Breeze for his defense claims that James Warren Michael was not during the period of time charged in the information, a deserter from the Armed Forces of the United States. Defendant also claims that he did no physical act tending to the secretion of the body of James Warren Michael. He also claims that he at no time lodged, assisted or cared for Michael.

"Before you can find the defendant guilty you must find from the evidence that Michael was, during the period of time from March 15, 1966 until on or about May 6, 1966, a deserter from the Armed Forces of the United States, and that defendant knew at the time he was in fact a deserter. Furthermore, merely telling the officers who made inquiry of him as to Michaels' whereabouts, that Michael was not at home, or that he did not know where Michael was, would not in itself constitute the crime of harboring, concealing and assisting Michael as charged in the information. "Before you can find the defendant guilty you must also find, beyond a reasonable doubt, that he harbored Michael by lodging and caring for him after secreting him; or keeping him out of sight; or that he assisted Michael by actively giving him aid and sustenance after having harbored and concealed Michael.

"In this connection, you also should consider whether anyone wilfully and knowingly harbored, concealed or assisted James Warren Michael during the period of time charged in the information, and if you so find that Michael was in fact harbored, concealed or assisted by anyone, then you must determine whether defendant Breeze knowingly and wilfully aided and abetted such person in harboring, concealing or assisting Michael. In order to aid or abet another to commit a crime it is necessary that the accused wilfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he wilfully seek by some act or omission of his to make the criminal venture succeed.

"Unless you find that defendant did harbor, conceal or assist Michael as charged, or that defendant aided and abetted his harboring, concealing and assisting, then you should acquit the defendant."

This court understands that the appellant has adequately excepted to Instructions numbered 5, 6 and 16, and that he urges upon this court in this appeal that such exceptions were and are well taken. It may, indeed, also be considered, although the record in that behalf is not very clear, that he excepts to the giving of Instruction No. 7, to the extent of its inclusion in its paragraph numbered 1 of the words, "or the aiding in the har-

boring, concealing or assisting any person." The appellant has consistently challenged the trial judge's instructions in that behalf.

In the foregoing general relation, it is now recalled also that an incident occurred during the course of the jury's deliberation which resulted in what, in effect, amounted to an addendum by the trial judge to his charge, which may be considered as affecting certain of the items of his instructions so lately reflected herein. After the jury had deliberated for a substantial interval (however, with some recesses), a written communication in behalf of the jury was addressed to the trial judge signed and formally tendered by the foreman of the jury. Its language follows:

"Is it necessary for the innocence or guilt of the defendant to be based on violations of all provisions of 18 U.S.C.A. section 1381 and 18 U.S.C.A. section 2, or can his innocence or guilt be based on either section 1381 or section 2 separate and apart from each other?"

Thereto, the trial judge in open court made the following response which is necessarily regarded by this court as a part of the judge's charge or instructions to the jury:

"In response to the inquiry of the jury, of course the court is under the *obligation and responsibility to assist* the jury if he can, rather than confuse them, in the interpretation of the instructions and the application of the law to the facts as the jury may determine them to be. If I correctly interpret the question that is submitted, it seems to me that the jury want to know whether, in order to find that the law was violated, it is necessary to find that a defendant did harbor and conceal and assist a deserter. Now, the statute reads in the disjunctive rather than the conjunctive, I think, and the court undertook to tell you that anyone who harbored, or concealed, or assisted any person, any of those things, if they were done would be a violation of law, not harbor and conceal and assist.

"Now, in connection with the other inquiry you make as to the provisions of the aiding and abetting statute, it is necessary, of course, before the aiding and abetting statute comes into effect, that you find that some person did harbor, conceal or assist a person who was a deserter, and that this defendant aided and abetted in that harboring, concealing or assisting. If you can't, Section 2, which is the aiding and abetting statute, can not be considered separate and apart from the essential elements of the offense as charged in the information, and as defined in Instruction 7. I hope this has answered your question. I think it's the best I can do, and if it will help you, why, the court will now suggest that you return to the jury room with the bailiff and proceed with your deliberations."

To that supplementation of the charge, the appellant also excepted.

It is now suggested by this court that the trial judge's instruction numbered 5, 6, 7 and 16, and also the trial judge's response to the jury's inquiry (which inquiry and response have just been recalled) be read together, *and in that sequence.* The contents of those instructional items have already been set down herein in a manner primarily to reveal the context in which, especially, instructions numbered 6 and 16 were imparted; but it will be prudent also to read the entire material in this paragraph identified, in the order in which it was by the trial judge declared to the jury. Thus read and evaluated, particularly in association with the portions of the charge appropriately and correctly defining relevant words and phrases, this court is persuaded that the trial judge fairly and adequately disclosed to the jury the nature of the accusation of the information against David Eugene Breeze, and the essential elements of the single offense with which he was charged. That information alleged, as has already been made to appear, only

this, "that" within the period defined above, David Eugene Breeze "did harbor, conceal and assist James Warren Michael," (it being necessary to prove only that he did harbor *or* conceal *or* assist James Warren Michael) "in that he obtained and rendered to James Warren Michael at Rural Route 3, Cherryvale, Kansas, protection, sustenance and services," (those, too, really in the disjunctive, rather than conjunctively) "as might prevent his discovery and apprehension" * * * "that," at the time thus defined, "James Warren Michael had deserted from the Armed Forces of the United States;" and "that" David Eugene Breeze then "knew James Warren Michael to have deserted from the Armed Forces of the United States." As has already been declared herein, that accusation was made solely within 18 U.S.C., Section 1381. Absolutely no other offense was charged either against David Eugene Breeze, or against Joyce Marie Michael.

Two persons were together and identically so accused in the information. It resulted that, (1) if they both joined in the commission of the offense charged, either by conspiracy, or by separate but concurring wrongful acts, both of them could have been convicted; or (2) that if either of them alone, without any participation of the other, committed the offense, the one so committing the offense, alone, could have been convicted, and his or her codefendant acquitted; or (3) by virtue of Title 18 U.S.C., Section 2(a), *applicable to crimes against the United States generally*, if one of the defendants alone committed the offense, but the codefendant aided or abetted its commission, not only could the one actually committing the offense be convicted as a principal, but also the aider or abettor could be convicted, and, also as a principal. In other words, 18 U.S.C. § 2(a) imposes liability to punishment as a principal upon him or her who aids or abets the commission of an offense against the United States, in like manner as upon him or her who actually and individually commits such offense.

■ It is here to be recognized that Title 18 U.S.C. Section 2(a), is a part of the "United States Code—Crimes and Criminal Procedure," and one of the GENERAL PROVISIONS, applicable to the entire United States criminal code. It results, therefore, that Title 18 U.S.C., Section 1381, is to be read and construed in like manner as if Title 18 U.S.C. Section 2, were a part of it. For, in reality it is. One has, thus, to understand that a person who aids or abets another in the harboring, concealment, protection or assistance of a deserter from the Armed Forces of the United States is himself a principal participant in such harboring, concealment, protection or assistance, and is punishable as such, if the evidence against him substantiates his "aiding and abetting." And it appears to be logical that, the evidence so warranting, a jury in his trial for the violation of Title 18 U.S.C., Section 1381, should be instructed accordingly, and with appropriate and considered reference to Title 18 U.S.C. Section 2(a).

Whether in such a setting, the prosecutor must in the (Indictment or) information explicitly, and *in ipsis verbis* spell out, and declare his reliance on, "aiding or abetting" or both, as the defendant's operative act or acts in the commission of the crime, is not exhaustively argued in this instance. Undoubtedly, if, in a particular case, express pleading to that issue, either affirmatively or negatively, be desired by the defendant, he may obtain it by appropriate exploratory procedure. And he will usually be favored in his pursuit. In that behalf, it is observed in the present record that, during the proceedings in this case had before the Honorable Wesley E. Brown, a judge of the United States District Court for the District of Kansas on June 6, 1966, counsel for the appellant, David Eugene Breeze, manifested some perplexity—and in his prime brief before this court, he signifies, a measure of persisting confusion—touching the significance of the allusion in the information to 18 U.S.C., Section 2, supra. But such perplexity as actually existed

appears not to have prompted the appellant, or his counsel, formally to demand, by motion or otherwise, explanatory disclosure by the prosecutor touching the area of any such perplexity beyond a recorded and transcribed record of the oral discussion in open court, wherein the judge last mentioned expressly declared that the information charged an offense violating "18 U.S.C., 1381 and 18 U.S.C., 2." Nevertheless, the appellant proceeded at once, and without further probing, to his arraignment wherein he tendered a plea of not guilty. And in due course thereafter his trial already adverted to was conducted without any such exploratory pleading in behalf of the defendant, David Eugene Breeze.

■ Without receding from the view hereinbefore expressed, that as a matter of correct pleading, the information filed in this case did not specifically, correctly and competently charge David Eugene Breeze with "aiding and abetting," this court is persuaded that the pretrial and arraignment proceedings, already adverted to, adequately brought notice to the appellant and his counsel that he was then confronted in his prosecution with that charge, and that such confrontation was, and by the court would be, regarded as within the thrust of the information's allusion to "18 U.S.C., 2". Whether that gesture of benevolence to the prosecution was or was not warranted, the defendant, without more, proceeded to trial in the face of it. And in the course of the trial of David Eugene Breeze evidence was adduced and received which, if by the jury believed and accorded a probative significance most favorable to the eventually prevailing plaintiff, was sufficient affirmatively to support a finding of such aiding or abetting.

In the light of that background and of the evidence received upon the trial, this court believes that the instructions so challenged, including those numbered 5 (by way of background), 6, 7, and 16, and the unnumbered supplemental instruction in answer to the jury's inquiry,

supra, with substantial accuracy presented to the jury the issue lately herein discussed, to which those instructions especially referred, and were adequately responsive to the issues involved, as the defendant, David Eugene Breeze, and his counsel had been given to understand them.

The appellant contends that the trial judge erroneously failed to give to the jury instructions numbered 4 and 5 requested by the appellant. However, in his argument in his brief he seems to rest, in this connection, on his requested instruction No. 5. In any event, an examination of the trial record discloses a want of virtue in the assignment, whether as made or as argued.

His requested instruction No. 4 was tendered in this language:

"Failure or refusal of the defendant to aid or assist the officers to apprehend and arrest James Warren Michael do not in themselves constitute the crime of which the defendant is accused; the terms 'harbor' and 'counsel' refer to some physical act of defendant tending to the secretion of the body of James Warren Michael and to lodging and to caring for him after secreting him."

Now, the trial court did give to the jury his Instruction No. 7 already quoted, supra. Without its complete repetition, it is recalled that that instruction defined the essential elements of the offense charged in the information to include, among other things:

"1. Harboring or concealing of any person or aiding in the harboring, concealing or assisting any person

2. who had deserted from the armed forces of the United States

3. and that the defendant knew such person to have deserted from the armed forces of the United States.

The burden is upon the prosecution to prove beyond all reasonable doubt

every essential element of the crime charged."

That item of charge was followed immediately by Instruction No. 8 which (except for its implicit assumption of the status of "the deserter" in respect of James Warren Michael) correctly defined "harboring", "concealing" and "assisting," thus:

"'To harbor' as used in the information means to lodge and to care for after secreting the deserter; 'to conceal' as used in the information means to hide, secrete or keep out of sight; 'to assist' as used in the information means to actively give aid and sustenance after having harbored and concealed the deserter."

And, throughout, the trial judge's charge explicitly and affirmatively emphasized the necessity to a verdict of guilty, of the proof beyond a reasonable doubt of every essential element of the charged offense, reserving of course the sufficiency of proof of less than all of the items of any element statutorily specified in the disjunctive. Thereby, and as it would appear, effectively, "failure or refusal of the defendant to aid or assist the officers to apprehend and arrest James Warren Michael" was eliminated as an element or ingredient of David Eugene Breeze's asserted guilt. He was simply not being prosecuted for that, whether as reflected in the information or in the trial court's charge to the jury.

Defendant's requested instruction No. 5 consisted of the following sentence: "Merely telling officers that James Warren Michael is (sic) not at home when in face he is (sic) there does not in itself constitute the crime of harboring, concealing, and" (presumably intending, "or") "assisting as charged in the information."

But, as has already been made herein to appear, the trial judge, in his Instruction No. 16, among other things, declared:

"Furthermore, merely telling the officers who made inquiry of him as to Michael's whereabouts, that Michael was not at home, or that he did not know where Michael was, would not in itself, constitute the crime of harboring, concealing and" (presumably more exactly "or") "assisting Michael as charged in the information."

If that be not adequate conformity, this court is unable to perceive its material variance from what the defendant professed to desire and request.

Touching a specification of alleged error in the giving by the trial judge to the jury, upon its request, of an additional instruction upon the subject of "aiding and abetting," this court has already offered its observations in an effort to keep, or perhaps "to place," that judicial answer in its rational perspective. This court believes that, in its context, that response was quite appropriate, indeed that it served actually to clarify a confusion which may theretofore have existed and would probably have persisted, without it.

The appellant, still on the subject of the charge to the jury, assails the trial court's action in giving to the jury, after it had been in apparently fruitless deliberation for a substantial period of time, an instruction within the area of the so-called "Allen instruction," infra. After the jury had deliberated, as in the immediately preceding sentence is indicated, and *some time prior to the presentation to the trial judge of the jurors' question above discussed and his answer thereto,* supra, the trial judge, on his own motion, called the jurors into open court and, in the presence of the appellant and of counsel, presented to them the following discussion:

"Let the record show that all of the attorneys are here in person and that the defendant is here in person. Members of the jury, the Court wants to

visit with you just a little bit. The Court wishes to suggest a few thoughts which you may desire to consider in your deliberations, along with all the evidence and all the instructions that have been previously given to you, including that of the presumption of innocence that must be allowed the defendant, and the requirement that the burden of proof is on the government to establish the defendant's guilt beyond a reasonable doubt. This is an important case. If you should fail to agree upon a verdict, the case is left open and undecided. Like all cases it must be disposed of at sometime. There appears no reason to believe that another trial would not be a heavy burden to both sides, nor does it appear there is any reason to believe that the case can be tried again any better or more exhaustively than it has been by either side. Any future jury must be selected in the same manner and the same source from which you were chosen, and so there appears no reason to believe that the case would ever be submitted to twelve men and women who are more intelligent, more impartial or more competent to decide it, or that more or clearer evidence could be produced on behalf of either side.

Of course, these matters suggest themselves to you upon brief reflection, to all of us who have sat through this trial. The only reason they are mentioned now is because some of them may have escaped your attention, which must have been fully occupied up to this time in reviewing the evidence. They are matters which, along with others, and perhaps more obvious ones, that remind us how important and desirable it is for you to agree upon a verdict of guilty or not guilty if you can do so without violence to your individual judgment and conscience. It is unnecessary to add that the Court does not wish any juror to surrender his or her conscientious convictions. As stated in the instructions given at the time the case was submitted to

you do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. The verdict to which a juror must—agrees must be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows.

However, it is your duty as jurors to consult with one another and to deliberate with a view of reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but you should do so only after a consideration of the evidence with your fellow jurors. And in the course of your deliberations you should not hesitate to change your opinion when convinced to believe it is erroneous. In order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor and frankness and with proper deference to and regard for the opinions of each other, that is to say, in conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to reexamine your own views.

If much the greater number of you are for conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it makes no effective impression upon the minds of so many equally honest and equally intelligent fellow jurors who bear the same responsibility, serve under the sanction of the same oath and have heard the same evidence with, we may assume, the same attention and equal desire to arrive at the truth. On the other hand, if a majority, or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again whether they do not have reason to doubt the correctness of the judgment which is not con-

curred in by many of their fellow jurors, and whether they should not distrust the weight or sufficiency of evidence which fails to convince the minds of several of their fellows to a moral certainty and beyond a reasonable doubt.

You are not partisans, you are judges of the facts. Your sole purpose is to ascertain the truth from the evidence before you. You are the sole and exclusive judges of the credibility of all the witnesses and of the weight and effect of all the evidence. In the performance of this high duty you are at liberty to disregard all comments of both the Court and counsel, including, of course, the remarks I am now making to you. Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of evidence, but remember also, that after full deliberations and considerations of all the evidence it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience. You may conduct your deliberations as you choose, but I suggest that you now retire and carefully reexamine and reconsider all the evidence bearing upon the questions before you.

You may be as leisurely in your deliberations as the occasion may require, and you shall take all the time which you may feel necessary. You may now retire with the bailiff and continue your deliberations in such manner as shall be determined by your good and conscientious judgment as reasonable men and women. You may go."

The immediately foregoing quotation has thus been set out by this court with acknowledged reluctance on the score of its length, but under the persuasion that its content should be regarded in its entirety; for, as a single entity, it was so presented to, and received by, the jurors. The writer of this opinion frankly acknowledges his personal entertainment, as a district judge, of reservations touching the employment and timing of such an instruction, and especially of that portion of the instant instruction which may be considered to appeal for concurrence, personally and directly, to jurors among a minority in the already elapsed segment of the deliberation; and customarily approaches the subject matter of the immediately foregoing quotation, much more briefly and less argumentatively, and introduces it into the prime charge itself, and before concrete divergence has arisen out of deliberation. But what principally matters here is the demonstrable attitude of the Court of Appeals, Tenth Circuit, towards essentially identical instructions. And that attitude appears clearly to support the action of the trial court in this case.

The employment of the term, "Allen Instruction," in the characterization of such an instruction is rooted in the eventually affirming opinion of Mr. Justice Brown in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. (for factual background and earlier consideration whereof by the Supreme Court, see Allen v. United States, 150 U.S. 551, 14 S.Ct. 196, 37 L.Ed. 1179, and Allen v. United States, 157 U.S. 675, 15 S.Ct. 720, 39 L.Ed. 854). Putting aside rulings upon the subject of other courts in the federal judicial system, it is made clear that in an impressive number of reported opinions, this Court of Appeals has followed the thought of Allen v. United States, supra, and approved the giving of an instruction essentially of the character presently under scrutiny. Among cases reflecting that position may be included Speak v. United States, 10 Cir., 161 F.2d 562, 564, 565; Apodaca v. United States, 10 Cir., 188 F.2d 932, 938, 939, 940; Thompson v. Allen (admittedly a civil case), 10 Cir., 240 F.2d 266, 268, 269, 270; Mills v. Tinsley (a habeas corpus case), 10 Cir., 314 F.2d 311, 313, 314; Carter v. United States, 10 Cir., 333 F.2d 354, 357; DeVault v. United

States, 10 Cir., 338 F.2d 179, 182; and Robinson v. United States, 10 Cir., 345 F.2d 1007, 1011. In the aggregate of the opinions thus cited, this court has given its approval to virtually all of the material that is reflected in the present trial judge's special charge as last quoted in detail.

 This court is, therefore, convinced that the appellant's argument, based upon alleged error in the trial judge's giving of the so-called "Allen Instruction" in the language lately quoted herein, is not well taken.

 Upon this appeal, David Eugene Breeze vigorously contends that as a matter of law, and in consequence of the status of Joyce Marie Michael as the wife of James Warren Michael, she could not legally be guilty of unlawfully harboring James Warren Michael; and that, as a consequence of her immunity to conviction for such harboring, it must follow that David Eugene Breeze could not be adjudged guilty of any offense in the way, or by reason, of his aiding or abetting her in such harboring. The former of those propositions was vigorously urged upon this court in Case No. 9638 by Joyce Marie Michael, the sole appellant in that case. Michael v. United States, 10 Cir., 393 F.2d 22. This court accorded respectful consideration in the *Michael* appeal to that issue. It carefully examined the decisional and textual authorities upon which Joyce Marie Michael there rested, and on which, principally, David Eugene Breeze presently relies. Without unnecessary repetition, reference is now made to the discussion, in the Michael opinion, supra, of the subject of Joyce Marie Michael's claim of immunity to prosecution or conviction under the single information involved in her trial, as well as in this one, and to this court's rejection as invalid in the Michael appeal of that claim. This court, upon the present submission, and with orientation to the instant appeal, adheres to that rejection of Joyce Marie

Michael's claim to immunity from such prosecution. And supportive of that rejection, it also cites again, but without repetitive identification, the authorities relied upon in the opinion in No. 9638, supra. For it follows that David Eugene Breeze's claim to immunity from guilt limited to his claimed status as an aider or abettor, upon the basis of the matrimonial immunity to prosecution of Joyce Marie Michael, collapses with the invalidity of her claim in her own behalf to immunity from liability under the harboring charge. In short, and for the reason, and upon the legal authority advanced by this court in Michael v. United States, supra, this court rejects as presently inoperative the authority, especially State v. Kelly, 74 Iowa 589, 38 N.W. 503, and the classical textual deliverances, cited by Joyce Marie Michael in her appeal, and now by the present appellant. Whether for weal or for woe, modern society and the criminal law have put aside, and passed by, State v. Kelly, supra, and in much its larger part, that textual authority.

But in his attack upon his conviction, the appellant, David Eugene Breeze, stands upon much more solid ground, when he assails the trial court's persistent rejection, under the spur of the government's counsel, of proof (*in the face of the trial record*) of the actual and final disposition by the United States naval authority, at a date substantially prior to the trial of David Eugene Breeze, of the issue of the status, as a deserter from the Armed Forces of the United States, vel non, of James Warren Michael, and, in logical consequence, of the appellant's *knowledge of the affirmative existence of such status.*

 Construed together, the first and second unnumbered paragraphs—and especially the second such paragraph—of Title 18 U.S.C., Section 1381, must be considered imperatively to require as a condition prerequisite to a verdict of guilty as against the appellant, David

Eugene Breeze, in this case, that the plaintiff have proved beyond a reasonable doubt, among other elements, both (a) that at the time defined in the information, James Warren Michael had actually deserted from the Armed Forces of the United States, and (b) that David Eugene Breeze *knew*—not merely suspected or thought—James Warren Michael so to have deserted from such Armed Forces. Proof of either such premise of guilt will not suffice. Both must be established, and beyond a reasonable doubt. This point need not be labored. No one presently questions it. And the trial judge clearly and correctly declared it in his charge. The trouble lies with the studied suppression and rejection of evidence directly instructive, if not actually conclusive, upon the point, for that suppression and rejection frustrated and thwarted the logical application of the instruction thus mentioned.

It is to be remembered that the information herein categorically, and necessarily, alleged both that "James Warren Michael * * * had deserted from the Armed Forces of the United States," and that David Eugene Breeze knew "him to have deserted therefrom." The plaintiff-appellee was obliged to prove both of those assertions beyond a reasonable doubt. The question, therefore, confronts this court, whether the appellee has proved the two related and essential allegations of the information, (1) that from on or about March 15, 1966 until on or about May 6, 1966, James Warren Michael was a *deserter* from the Armed Forces of the United States, and (2) that David Eugene Breeze, appellant herein, *then knew that he was such a deserter*. To support and sustain a conviction of the appellant, David Eugene Breeze, the appellee, upon the trial had, let it be repeated, the burden of proving beyond a reasonable doubt, and without reversible error, not one or either, but both of those allegations. And, obviously, of the *two* allegations, the former was dominant. For in default of its establishment, the latter also, and necessarily, would fail of proof. One does not know that to be a fact which, itself, does not objectively exist. He may believe it to be true; but that is not enough. And the appellant, David Eugene Breeze, is not here being prosecuted for acting upon a mistaken understanding.

Two statutory definitions are now necessarily recalled.

Article 85, Uniform Code of Military Justice, Title 10, U.S.C. Section 885, *by way of definition of the offense of desertion*, provides, in presently relevant part, that:

"(a) Any member of the armed forces who—

(1) without authority goes or remains absent from his unit, organization, or place of duty with intent to remain away therefrom permanently

\* \* \* \* \* \*

is guilty of desertion.

\* \* \* \* \* \*

(c) Any person found guilty of desertion or attempt to desert shall be punished, if the offense is committed in time of war, by death or such other punishment as a court-martial may direct, but if the desertion or attempt to desert occurs at any other time, by such punishment, other than death as a court-martial may direct.

By Article 86, Uniform Code of Military Justice, Title 10, U.S.C. Section 886, *in the way of the definition of the offense of "absence without leave,"* it is provided that:

"Any member of the armed forces who, without authority—

(1) fails to go to his appointed place of duty at the time prescribed;

(2) goes from that place; or

(3) absents himself or remains absent from his unit, organization or place

of duty at which he is required to be at the time prescribed;

shall be punished as the court-martial may direct."

It will at once be observed that the controlling distinction between the two offenses is this, that an essential ingredient of the offense of "desertion" is the possession by the allegedly offending member of the armed forces of the *"intent to remain away therefrom permanently."* (Emphasis added.)

But it will as readily be perceived that the offense of desertion is incomparably more odious, and more severely punished, than the offense of being absent without leave. They are not comparable transgressions, though they do possess some common factual elements.

Opening the plaintiff's presentation of evidence upon the trial of David Eugene Breeze, counsel for the plaintiff-government, *"all parties being present as before, the jury being in the box,"* (emphasis added), offered in evidence what he characterized as "Government's Exhibit No. 1," which he then described in the jury's presence as:

> "the duly authenticated record of the Secretary of the Navy in regard to the—to James Warren Michael— showing that on the 24th day of April, 1965 he was absent without leave. On the 24th day of May, '65 declared a deserter and on the 6th day of May, 1966 apprehended as a deserter by the F.B.I. at Cherryvale, Kansas."

That offering technique, by way of understatement, was manifestly intolerable. Let it be remembered that the then offered Exhibit No. 1 was not yet in evidence. Its contents were not, therefore, then appropriately revealable to the jury. Nevertheless, the plaintiff's counsel, in the course of his offer, presumed to expose, not with factual objectivity, but *according to his interpretation as an advocate,* the material which, as he contended, was embraced within the ten-

dered exhibit. To the offer, counsel for David Eugene Breeze objected because (1) the exhibit did not tend to prove any issue in the case; (2) was not the best evidence; (3) deprived David Eugene Breeze of the right of cross-examination; (4) *was not a charge of desertion made by any judicial branch of the Army* (sic) *but was a mere administrative declaration* (emphasis added), and (5) was destitute of any showing of authority in the party or parties making the declaration or declarations reflected in it. Those objections were by the trial judge immediately put aside by the interposition of an overriding inquiry on his part, whether "there was any question about the *form of the authentication* of it." Which being answered negatively, the exhibit was by the trial judge at once received. As proof of desertion by James Warren Michael, the exhibit was vulnerable to the objection theretofore tendered by the appellant, supra.

Moreover, the offeror's gratuitous reflection of the contents of the exhibit was, itself, inexact and misleading. The authenticating certificate of the Chief of Naval Personnel does not declare that the designated Exhibit No. 1 is "the duly authenticated record of the Secretary of the Navy in regard to James Warren Michael." What it does declare is that "the annexed are true copies of pages from the service record of airman James Warren Michael, United States Navy, 470 03 87 covering the period from 16 February 1965 to 27 May 1966." Thus, it does not even pretend to be "a duly authenticated record of the Secretary of the Navy in regard to James Warren Michael" either in the entirety of such record, or, for that matter, during any designated consecutive interval. At most, it reflects a selective and studied gleaning of items, or notations, from the named enlistee's service record, not a complete or exhaustive disclosure of such service record.

Thus, the allusion to the 24th day of April, 1965, appears to be rooted in an

entry made, not on that date but eighty-four days later, therefore, a fairly remote assertedly historical memorandum, as follows:

"17 JUL 65: Issued orders by U. S. Naval Receiving Station, Treasure Island, San Francisco, California to report to MATS Terminal Bldg., Travis AFB FFT to Attack Squadron TWENTY TWO not later than 1800, 24 APR 65. Failed to report in compliance with such orders and is on unauthorized absence from 1800, 24 APR 1965.

> /s/ D. M. Wyand
> D. M. WYAND, CDR USN
> Commanding Officer"

Similarly, the entry having to do with May 24, 1965 was apparently made on October 11, 1965, therefore, one hundred forty days after its supposedly operative date, and in this language:

"11 OCT 65: Declared a deserter on 24 MAY 1965 having been on unauthorized absence since 1800, 24 APR 1965 from Attack Squadron TWENTY TWO, on baord USS MIDWAY (CVA 41) which time absence commenced was deployed in the Western Pacific.

> /s/ D. H. Beyer
> D. H. BEYER, LTJG, USNR
> Personnel Officer
> BYDIRCO"

And the entry referable to the 6th day of May, 1966 was made some five days thereafter, as follows:

"11 MAY 66: Apprehended by FBI at Cherryvale, Kansas 1840 hours, 6 MAY 1966. Returned to naval jurisdiction at or about 1125 hours, 10 MAY 1966, U. S. Naval Air Station, Olathe, Kansas stating on unauthorized absence from USS MIDWAY (CVA 41), San Francisco, California since at or about 1100 hours, 24 April 1965, a period of approximately 1 year, 16 days, 11 hours and 25 minutes. Retained on board pending verification of status. No claim for reward has been submitted or paid. NavPers 641 issued.

> /s/ J. K. Brown
> J. K. BROWN, LCDR. USNR,
> Legal Officer
> By direction of the Commanding Officer."

In addition, however, to the above quoted entries, to which counsel for the plaintiff thus adverted, the tendered and eventually received Exhibit 1 contains the following further service record entries in respect of James Warren Michael:

"13 MAY 66: Transferred this date in a disciplinary status, under guard, via government air to the Commanding Officer, Administrative Command, U. S. Naval Training Center, Great Lakes, Illinois for resumption of duties and disciplinary action. To arrive NAS Glenview, Illinois ETA 1730Z, 13 MAY 66.

/s/ J. K. Brown
J. K. BROWN, LCDR. USNR,
Legal Officer
By direction of the Commanding Officer

---

TRANSIENT PERSONNEL UNIT, NAVAL ADMINISTRATIVE COMMAND, USNTC, GREAT LAKES, ILLINOIS

---

"27 MAY 66: Delivered on board this command at 0830, 14 May 1966 and placed in a restricted status at 0900, 14 May 1966 awaiting disciplinary action. NavPers 641 has not been issued.

/s/ T. F. Ingram
T. F. INGRAM, LTJG, USNR, DIR PROC DIV, BY DIR OF THE C. O."

---

and,

"27 MAY 66: Status changed at 1045, 17 May 1966 from restriction awaiting disciplinary action to confinement awaiting disciplinary action.

/s/ T. F. Ingram
T. F. INGRAM, LTJG, USNR, DIR PROC DIV, BY DIR OF THE C. O."

———◆———

Manifestly, the several entries thus reflected, although generally identified as having been made "by direction of the Commanding Officer," do not rise to the stature of a formal or competent adjudication of guilt of any offense, military or otherwise. At most, they are memoranda alerting the proper military authorities to James Warren Michael's suspected violation of Navy Department orders and consequent amenability to appropriate disciplinary action. No such entry reflects a competent adjudication by a duly erected military tribunal of guilt of any such charge, or even of the actual institution of such a charge. That is true even of the entry of October 11, 1965, attributed to action assertedly taken several months earlier, and on May 24, 1965, which was patently an administrative entry. The entries after May 6, 1966, supra, do foreshadow imminent, but still prospective, accusatory and adjudicatory action. The supposition

that on or prior to May 6, 1966, James Warren Michael had ever been adjudged —in any rational sense of that word— to be a deserter from the Armed Forces involves an obvious *non sequitur*.

It is observed now that in the presentation of his defense upon the trial, David Eugene Breeze caused to be identified by James Warren Michael, as a witness in Breeze's behalf, Exhibit "A", which is the "charge sheet" issued and delivered to James Warren Michael at United States Naval Training Center, Great Lakes, Illinois on May 17, 1966, containing the designation of the charge upon which Michael was then in military custody, and introduced that exhibit in evidence. The prosecution promptly objected to its reception on the ground that it was dated after May 6, 1966. And the trial court sustained the objection. Interestingly, the exhibit identified the "offense alleged" as

"viol: Art 86, U.C.M.J.: UA fm *24 April 1965* to *10 May 1966.*" which obviously means "the violation of Article 86, Uniform Code of Military Justice Unauthorized Leave from April 24, 1965 to May 10, 1966." And the offense defined in Article 86, Uniform Code of Military Justice is "absence without leave," not "desertion," supra. Moreover, the specified time of that violation was from April 24, 1965 to May 10, 1966, that is, continuously from the earliest date in controversy through the date of apprehension and some four days thereafter, the terminal date probably required or needed for departmental processing. Thus, the naval authority defined James Warren Michael's status continuously from April 24, 1965 to and beyond May 6, 1966 as that of one "absent without leave," not as a "deserter."

Moreover, in the course of the trial, counsel for David Eugene Breeze, in the absence of the jury, made the following offer of proof:

"MR. GRAY: May the record show that if permitted to do so the defendant would have placed in evidence Defendant's Exhibit A for the purpose of showing that James W. Michael was charged only with a violation of Article 86 of the Uniform Code of Military Justice, which is 'absent without leave' for being absent from his post between April 24, 1965 to May 10, 1966, and would by the Defendant's Exhibit B, have shown that upon a Special Court Martial—a Summary Court Martial—" i. e. a military court determining upon lesser offenses,—"he was found guilty of being absent without leave, and given a sentence of sixty days restriction to the post, and that was all. Now, I again make the offer."

Immediately, the trial judge, after adverting briefly to Plaintiff's Exhibit No. 1, supra, rejected the offer. So doing, he used this language:

"In view of the record that existed on Airman James Warren Michael at the time he was in the neighborhood of Cherryvale, which indicates to the court positively that he was at that time classified as a deserter, the fact that at a later time he may have been charged with a lesser offense after the episode which this defendant was charged, the court doesn't consider material. If the charges had been dismissed it wouldn't have made any difference, if he was, at the time, a deserter. The objection originally sustained will again be upheld. I don't think it makes any difference what happened after May the 6th. Anything else?

MR. GRAY: May I renew my exception?

THE COURT: Yes."

That action of the trial court had been foreshadowed much earlier in the trial. For instance, in the course of the opening statement in behalf of the defendant, and, in the presence of the jury, the following colloquy occurred:

"MR. GRAY: (concluding his opening statement) Furthermore, we will expect the evidence to show that Michael was never prosecuted as a deserter.

MR. GOODWIN: (for plaintiff) I'm going to have to object on the ground that this is irrelevant and incompetent.

THE COURT: *It's irrelevant. The question is whether he was charged with being a deserter at that time.* (Emphasis added.)

MR. GRAY: Then we will undertake to show that he was not charged as a deserter at that time.

THE COURT: Well—

MR. GOODWIN: Objection.

THE COURT: They have a right to undertake to show that. Overruled."

In its context, the italicized language of the trial court's initial ruling in that colloquy is peculiarly inappropriate. Significantly, the judicial declaration, "The question is whether he was charged with being a deserter at that time," is strikingly indefensible. A fair reading, both of the information and also of Title 18 U.S.C. Section 1381, within which the information was formulated, demonstrates unmistakably that, "The question," in that behalf, was twofold, first whether, as an objective fact, James Warren Michael *was* "at that time" a deserter from the Armed Forces of the United States, and secondly, whether David Eugene Breeze then actually *knew* he was such a deserter. Whatever may have been its evidentiary effect, if, any, the making of an entry, or of entries, whether attested or anonymous, upon James Warren Michael's naval service record, did not obviate the necessity of affirmative proof of each aspect of the foregoing twofold question, or, itself, conclude the issue with respect thereto. A second unfortunate impact of the quoted language may not be ignored. Presented before the jurors who were shortly to receive the case with the court's charge, that sentence was reasonably adequate to lead the jurors to consider that evidence that, "at that time," James Warren Michael was charged with being a deserter would, without more, suffice to support a finding that he then was actually a deserter. For, "many a

shaft at random sent hits mark the archer never meant." Worse still, the arrow thus in flight was studiously aimed.

That, as the appellant's offer of proof, factually unchallenged, asserted, James Warren Michael, before the trial of the appellant was charged with and, by a summary court-martial, convicted of the offense of absence without leave, and that any accusation of desertion against him was abandoned, will not be questioned. Upon oral argument in this case before this court, counsel for the parties were asked by a member of the court what the fact in that behalf was. And counsel for the government, freely and frankly, answered that shortly after the apprehension of James Warren Michael, he was proceeded against, and convicted, upon a charge of absence without leave, and was subjected only to brief disciplinary restriction. Of course, that acknowledgment was of an actual fact which, through the trial, was studiously concealed from the jurors.

■ The appellee argues that, in a case of this character, brought under Title 18 U.S.C. Section 1381, unnumbered second paragraph, it is not essential to the conviction of an alleged harborer of a deserter from the Armed Forces of the United States, that the asserted deserter be, by the military authorities, actually charged with, or convicted of, desertion after his apprehension. This court readily recognizes that such position is broadly true. Beauchamp v. United States, 6 Cir., 154 F.2d 413, correctly so determines. It is observed, incidentally, that Mancuso v. United States, 6 Cir., 162 F.2d 772, 773, sometimes cited upon the question, is not in point, in consequence of the untimeliness of its proceedings in review and of the inadequacy to support a conviction for desertion on a plea of not guilty of that sailor's service record. It is unquestionably true that in a case of this nature, the vital fact of the actual desertion of the identified member of the Armed Forces of the United States may competently be proved by means of

factual evidence without the employment for that purpose of such member's military service record. And such a case may be prosecuted successfully to conviction of an alleged harborer, though no punitive military prosecution of the alleged deserter be ever instituted against the allegedly errant service man. But those suppositious situations are quite beside the present mark. The instant case does not involve proof—or even attempted proof—of the essential element of the service man's actual desertion by evidence wholly—or at all—apart from his service record. Here the government resorted chiefly to the service record for such proof; but by deliberately concealing from the jury the determinative phase of the accusation against the service man, led the jury to suppose that there was occlusory finality in the accusing memoranda in so much of the service record as was selectively disclosed to the jury. The jurors may well ·be considered to have understood that an entry in the service record that the service man was "declared a deserter on 24 May, 1965" affirmatively and conclusively established his status as a deserter, and, in default of a complete history of the charge thus identified, have concluded that that entry possessed the quality of ultimate assurance. Such a course is unacceptable and is not conducive to the resolution of criminal litigation upon the basis of the totality of the facts.

■ This court is of the opinion that, appraised in the light of the foregoing features of the trial of David Eugene Breeze, the reception in evidence, over timely objection, of the appellee's Exhibit No. 1, restricted, in practical effect, to occurrences before 5:30 o'clock A.M. of May 6, 1966, coupled with the government's persistent resistance to, and the trial judge's rejection of, the appellant's demand for the presentation of the entire record upon the factual issue of desertion, was error of a character so serious as to require that the judgment herein as against David Eugene Breeze be reversed, and the case be remanded to the District Court for the District of Kansas, for a new trial, and announces its ruling accordingly.

Reversed and remanded for a new trial.