STEVE GOLDEN v. THE STATE.

No. 6306. Decided June 15, 1921.

**1.—Exhibiting Gaming Table—Suspended Sentence—Remarks by Trial Judge.**

Where, upon trial of keeping and exhibiting a gaming table, the defendant asked for a suspended sentence and the jury were out a long time, and after they had been out over forty-two hours the trial court sent for them and asked the jury whether they could reach a verdict, and was told by the foreman that they could not, to which he replied that it was expensive to try these cases and the facts in the case being short and clear, the court could not see why the jury could not reach a verdict, etc., and it appeared that there were two jurors on the jury who held out on the question of suspended sentence and the court had a colloquy with the two said jurors with reference thereto, whereupon he retired the jury and within five minutes thereafter they returned with a verdict of guilty, the same was reversible error. Following Lagrone, v. State, 84 Texas Crim. Rep., 609, and other cases.

**2.—Same—Verbal Instructions—Practice in Trial Court.**

The court seriously doubts the legality of the trial court in any case to verbally instruct the jury when empanelled to try a felony case. Following Gribble v. State, 85 Texas Crim. Rep., 52, and other cases.

**3.—Same—Misconduct of Jury—Matters Not in Evidence.**

Where upon trial of exhibiting a gaming table, the jury discussed in their retirement matters not in evidence upon the trial, the same was reversible error.

Appeal from the District Court of Bell. Tried below before the Honorable M. B. Blair.

Appeal from a conviction of keeping and exhibiting a gaming table; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

*DeWitt Bowmer,* and *Evetts & White,* for appellant.—On question of remarks by Judge: Rogers v. State, 225 S. W. Rep., 57; Hughes v. State, 197 id., 215; and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Bell County of keeping and exhibiting a gaming table and bank, and his punishment fixed at two years in the penitentiary.

Inasmuch as the case must be reversed, we forego a discussion of the facts.

Appellant asked for a suspended sentence. The jury were out a long time. After they had been out over forty-two hours the trial court sent for them and, as stated in the first bill of exceptions, the following took place:

"The court asked the jury: 'Have you reached a verdict in this case?' The foreman, Mr. Tulloch, replied: 'We have not been able to reach a verdict.' The court then asked: 'Do you think you can reach a verdict?' The foreman replied, 'I do not think we can.' The court then asked: 'It is not the purpose of the court in keeping you together to punish you, but it is expensive to try these cases, and the facts being short and clear in this case, the court can not see why you gentlemen cannot reach a verdict. It is not in the province of the court to make a jury reach a verdict in the case, and the court or the judge of the court has no power or right to make you get a verdict in this case: It has been reported to me by your foreman that some of the jurors would be able to get a verdict but that they state to send the defendant to the penitentiary would not bring shame upon the defendant, or reflect upon him, but that it would bring shame and disgrace upon the wife and child of the defendant, and that others state that the punishment for the crime is too severe for the character of offense committed. These matters are not proper for you to consider in your deliberations, and you absolutely violate your oath to do so, for the reason that you were sworn when taken on this jury that you would be governed solely by the testimony adduced upon the trial of the cause, and the charge of the court herein given you.'

The court then asked: 'Is your disagreement upon the merits of the case, that is, the guilt or innocence of the defendant?' The foreman replied, 'We have all agreed on that question.' The court then asked, 'Then upon what point are you unable to agree?' The foreman replied, 'On the question of the suspension of the sentence.' The court then asked, 'Numerically, how do you stand on this question?' The foreman replied, 'Ten to two.' The court then asked: 'Do you two gentlemen think you can ever agree to a verdict in this case?' After a short time Mr. Stokes said, 'No, sir, I do not think that we can.' The court made no further reply, and after about one minute, Mr. Lisenbe, who was sitting by Mr. Stokes, said 'Yes, sir, I think if you will send us back, we can get a verdict.' The court said: 'Then gentlemen, retire and try to get a verdict in this case. It is the desire of the court that you get a verdict, and if you are unable to get a verdict after you retire, I will discharge you a little later.' "

It is shown that within five minutes after the above occurred, the jury returned a verdict of guilty without recommendation of suspended sentence. The agreement as to the guilt of appellant had been reached soon after the retirement of the jury, but more than forty-two hours of their disagreement had been on the question of whether they should allow him the benefit of suspended sentence. One of the two jurors who stood out for suspended sentence until the court sent for them as above indicated, in his testimony before the court on the hearing of the motion for new trial testified: "I just figured the court was expecting us to give him a sentence of two years, and rather than hold out for a suspension of the sentence, I rendered a verdict. I rendered that ver-

·dict because I thought that was what the court wanted me to do from his conversation, to the jury, and I agreed to it on that account." In the affidavit of the other of said two who were holding out for such ·suspended sentence, appears the following:

"The court asked this question: 'Do you two gentlemen believe you ·could get a verdict if you retired again after this talk?' and the court then said, 'There is no reason in this' case why a decision couldn't be reached.' The court then told the jury to go back to the 'jury room and arrive at a verdict, like they ought to. This affiant told the court ·that he based his judgment in the case, not upon whom the verdict might effect, but upon the facts adduced upon the trial of the case. All of which action of the court influenced his vote and that he took it to be a charge from the court to find the defendant guilty and not suspend his sentence, and that he did change his vote solely because of the action of the court, and that he would not have so changed his ballot and voted for conviction without suspending defendant's sentence, had it not been for the action of the court."

In addition to the above, juror Dollarhide testified on the hearing of the motion for new trial as follows:

"When we went back to the jury room after the court had talked to us, Mr. Stokes used some pretty rough language, he said, 'It beats hell that the court could tell a man sitting on the jury to return a verdict,' ·or words to that effect. He was sitting down against the wall, and I told him that he didn't have to vary from his opinion, to stay with it if he wanted to. He was mad, but finally he said, 'I will do it,' but he says, 'I don't want the blame to be on me. ' "

The conclusion that the jury were influenced by what the court had ·said becomes more certain in view of the fact that the verdict was ·reached and returned in five minutes after the jury returned to their room when the interview of the court had ended. It thus appears that ·what the court said to the jury accomplished what forty-two hours of ·their deliberation had failed to bring about. Examining what the court said on this occasion, we find that he called attention that the trial of ·cases was expensive. In the case of Lagrone v. State, 84 Texas Crim. Rep., 609, 209 S. W. Rep., 411, we said: "Too much caution cannot ·be exercised in  .  .  .  putting before them (the jury) matters which should not enter into or affect their deliberations, such as the expense ·incident to a mistrial should in all cases be avoided." In the instant ·case the trial court further said, "The facts being short and clear in ·this case, the court cannot see why you gentlemen cannot reach a ver-·dict." In the Kelley case, 33 Texas Crim. Rep., 31, the trial court said ·to the jury under circumstances closely akin to those before us in the instant case, "It seems strange you should fail to agree, when there is so little conflict in the evidence. If it was a long complicated case with conflicting testimony, the court could readily see a cause for fail-·ure to agree." In the opinion in that case, referring to the statement ·of the trial court qualifying the bill of exceptions, this court said: "It

is true the court never intimated its opinion regarding any one fact in the case, but the trouble is, its remarks tended to sweep away the defense in bulk." In the instant case the trial court enumerated certain matters which had been reported to him as being under consideration by the jury, and told them they were violating their oaths in considering such matters. The manner in which communications from a jury to the court may be made is statutory, as is also that in which the court may instruct the jury as to the law of the case. It seems that after having so expressed himself, the court spoke directly to the two jurors who had not found the evidence clear enough to lead them to agree to a conviction without suspended sentence, and asked them if they thought they could ever agree to a verdict. One of them answered that he thought if the court would send them back they could; the other replied that he did not think they could. The court then told them to retire and try to get a verdict, that it was the desire of the court that they get a verdict. This was manifest error. These two men had agreed, as far as they were concerned, on a verdict of guilty with the suspended sentence. The expression to them by the court of his wish to know if they could agree on a verdict,—was obviously an inquiry as to whether they could agree with the others of the jury; and we are unable to rid ourselves of the belief that under the circumstances the trial court's statement of his desire that they should get a verdict might easily be construed by said two jurors as directed at them, and as evidencing a desire on the part of the court that they should agree to what the others had agreed on.

We also doubt seriously the legality of the trial court in any case verbally instructing a jury, impannelled to try a felony case, that they may or may not consider certain indicated matters for any purpose. We repeat what we said in the cases of Gribble v. State, 85 Texas Crim. Rep., 52, 210 S. W. Rep., 215 and Lagrone v. State, *supra.*

Appellant also complains of the misconduct of the jury. The court heard evidence in support of this ground of appellant's motion for new trial. Most of the jurors testified. The statement of facts heard by the court as bearing on this matter covers about fifty pages. Without contradiction it appeared that a newspaper article was read and discussed in the jury room, wherein it was stated that appellant was charged in nineteen other cases with burglary, theft and receiving stolen property. Juror Halsey testified that he already knew about those charges, and that he thought the jury had discussed them before they got the paper. Juror Winfrey said it was discussed in the jury room in connection with the suspended sentence, that appellant would not reform; that he was doing the same thing in Cameron that he had done in Temple. A juror testified that he told a deputy sheriff that Stokes and Lisenbe were the two jurors who were contending for the suspended sentence. A juror testified that another juror told him that appellant lived with a prostitute in Temple. Mr. Cole,—from whom this juror said he got such information,—was used as a witness but not

asked to deny or affirm the above. Juror Tyler testified that before he changed his vote from guilty with suspended sentence, to guilty without same, it was the general talk of the jury room that appellant had been living with a prostitute.

None of these matters should have been so discussed in the jury room. True, appellant had admitted on cross-examination that he was under indictment in other cases in this court, but the evidence went no further. No one had testified that appellant was doing the same thing in Cameron that he had done in Temple. No one had sworn that he lived with a prostitute. No one had said that he was charged with burglary, theft of sugar and receiving stolen property. Discussions between deputy sheriffs and jurors as to what is being considered by the jury, or who on the jury stands for this or the other side, are not proper. The jury are sworn not to discuss the case except among themselves, and communications with reference to same are carefully guarded by statutory directions, and the courts should lend their best efforts to see that these directions are followed.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*