Lawrence Scott GRIFFITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–83–0479–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 14, 1985.

Larry Urquhart, Brenham, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Houston, for appellee.

Before BASS and COHEN, JJ., and QUENTIN KEITH, J. (Retired).

### ORDER DISMISSING APPEAL

QUENTIN KEITH, Justice (Retired).

The appellant was charged with capital murder in the death of Sarah Reese during the robbery of Jonelle Callaway. After finding him guilty, the jury was unable to reach a verdict on the second special issue regarding punishment, Tex.Code Crim.P. Ann. art. 37.071(b)(2) (Vernon 1981), and the court assessed punishment at life imprisonment. *Id.* at (e).

■ The ninth ground asserts that the trial court erred in giving a "dynamite" charge over his objection. Testimony at the guilt/innocence stage of appellant's trial began at approximately 10:30 a.m. on June 13, 1983, and concluded at approximately noon on June 16. The total time for presentation of evidence was approximately 22 and one-half hours. The jury began its deliberations at 5:06 p.m. on June 16. At 11:00 a.m. June 17, after six and one-half hours of deliberation, it sent out a note stating that it was deadlocked. Appellant's request for a mistrial was denied. The jury was returned to the courtroom and was given the following charge:

> Members of the jury, in response to your comment regarding your inability to reach a verdict, *I will instruct you to follow the oath that you took, that you and each of you solemnly swear that in the case of the State of Texas v. Lawrence Scott Griffith, you will a true verdict render according to the law and the evidence so help you God.* It would

be necessary for the court to declare a mistrial if the jury found itself unable to arrive at a unanimous verdict after a reasonable length of time. The indictment will still be pending, and it's reasonable to assume the case will be tried again, the same questions to be determined by another jury and with no reason to hope such other jury would find the questions any easier to decide.

The length of time that the jury will be required to deliberate is within the discretion of the court, and the court does not at the present time feel the jury has deliberated a sufficient length of time to fully eliminate the possibility of its being able to arrive at a verdict.

You are to continue to deliberate in this case. (emphasis added)

The appellant objected to this instruction on the ground that it was coercive. The jury retired for further deliberation, and at 5:00 p.m. it sent the court a second deadlock note, causing the appellant to move for a mistrial again. No further charge was given. At 9:30 p.m., the appellant moved for a mistrial a third time. Jury deliberations were recessed at 10:00 p.m. The jury reconvened at 8:20 a.m. the following day and returned a verdict of guilty at 11:15 a.m.

The type of instruction given in this cause, known as a "dynamite" charge because of its ability to remove obstacles to the return of a unanimous verdict, is also called an *"Allen"* charge after the case *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).[1] *Allen* has been cited as authority on this subject for almost a century. It is enlightening to examine the instruction approved in *Allen* and see how very different it is and how much more protective of the parties [2] it is than the *"Allen"* charge given in the instant case. The instruction in *Allen v. United States* informed the jury that:

in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the questions submitted with candor and with proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

1. The case of Alexander Allen was extraordinary. Allen, a 14-year-old Black, was tried three times for the murder of an 18-year-old White male. The case was tried in the United States Court for the Western District of Arkansas, apparently because the crime took place in the "Cherokee Nation of the Indian Territory." 164 U.S. at 494, 17 S.Ct. at 154. All three juries rejected Allen's claim of self-defense, and he was sentenced to death in at least two of the trials. The first conviction was reversed by the Supreme Court in *Allen v. United States,* 150 U.S. 551, 14 S.Ct. 196, 37 L.Ed. 1179 (1893). The second conviction was reversed in *Allen v. United States,* 157 U.S. 675, 15 S.Ct. 720, 39 L.Ed. 854 (1895). The third conviction was affirmed in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), from which comes the *Allen* charge. Allen apparently had no counsel in either the second or third appeal to the United States Supreme Court. 157 U.S. at 678, 15 S.Ct. at 720; 164 U.S. at 493, 17 S.Ct. at 154. Allen's first and second convictions were reversed because of jury instructions which erroneously limited his right to self-defense. The third Supreme Court decision in Allen's case, in addition to upholding the "Allen" charge, approved an instruction stating that a defendant is presumed to intend the natural and probable consequences of his own act. 164 U.S. at 496, 17 S.Ct. at 155. This proposition of law was overruled 83 years later in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 245, 61 L.Ed.2d 39 (1979).

2. Both the state and the defendant are protected by a neutral instruction since the party having the minority vote in a deadlocked jury will vary from case to case.

164 U.S. at 501, 17 S.Ct. at 157. This charge, although encouraging further deliberations, could not be misconstrued as a criticism of a juror's steadfast adherence to his own judgment, for it explicitly stated that no juror should change his vote in mere acquiescence to the opinion of his fellow jurors.

The charge in the instant case stands in marked contrast to the instruction in *Allen v. United States.* The admonishment to "follow the oath that you took" implies that the failure to reach a unanimous verdict either results from or constitutes a violation of the juror's oath. Texas jurors swear to render a true verdict, not a unanimous verdict. Tex.Code Crim.P.Ann. art. 35.22 (Vernon 1966). Disagreement among jurors is no evidence that any juror is violating his oath. On the contrary, it is at least as probable that such disagreement is evidence that the oath is being conscientiously followed. Instructing a deadlocked jury to follow its oath creates a significant risk that jurors will interpret the comment as criticism of the position taken by the minority. This danger is increased when, as in the instant case, the charge contains no cautionary instructions like those given in *Love v. State,* 627 S.W.2d 457 (Tex.App.—Houston [1st Dist.] 1981, no pet.), in which the judge told the jury:

> I don't mean to say that any individual man or woman on the jury should yield his or her conscience and positive conviction .... He or she should not surrender any conscientious views founded upon the evidence unless convinced by his or her fellow jurors of his or her error.

*Id.* at 459. Such instructions clearly reduce the charge's coercive potential. This court has previously observed that a similar instruction went further than *Allen* charges approved in other reported cases. *Simpson v. State,* 668 S.W.2d 915, 919 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

We find that the trial court erred in admonishing the jurors to follow their oaths without further instructing them that it was proper for them to steadfastly adhere to their individual convictions.

We conclude, however, that the error was harmless. Nothing in the record indicates that any juror was coerced by the instruction given. No affidavits or testimony to that effect were produced at a hearing on a motion for new trial or at any other time. Such evidence was admitted at the motion for new trial hearing in *Golden v. State,* 89 Tex.Cr.R. 525, 232 S.W. 813 (1921), and influenced the court to hold that the instruction in that case was harmful. The record before us, however, reflects the absence of any coercive effect. The jury in the case at bar deliberated for 13 hours after the instruction was given and during that time sent out a second note stating that they were deadlocked. The jury was obviously not stampeded to a quick verdict by the instruction. This is not a case like *Golden,* where the jury deliberated for 42 hours in a case where the evidence was "short and clear," and then suddenly returned a unanimous verdict five minutes after the coercive instruction was given. The Court of Criminal Appeals pointedly observed, "It thus appears that what the court said to the jury accomplished what forty-two hours of their deliberation had failed to bring about." *Golden,* 89 Tex. Cr.R. at 527, 232 S.W. at 814; *see also Arrevalo v. State,* 489 S.W.2d 569 (Tex. Crim.App.1973).

■ We need not rule, however, on this or any other ground of error because we have received from the State's Attorney a motion to dismiss and a sworn report from the Bexar County Sheriff that the appellant, after giving notice of appeal in this case, escaped from custody in November of 1984, and has not been recaptured or voluntarily surrendered within thirty days after his escape. These circumstances terminate our jurisdiction. Tex.Code Crim.P.Ann. Arts. 44.09, 44.10 (Vernon Supp.1984). The State's motion is granted.

The cause is dismissed for lack of jurisdiction.