Mack-C v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-019-CR

     CRAIG MACK,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 91-509-C
                                                                                                    

O P I N I O N
                                                                                                    

      A jury found Craig Mack guilty of the offense of delivery of a controlled substance: cocaine
(enhanced). It assessed punishment at life in prison. He appeals on two points. His first point
is that the indictment was fundamentally defective because it failed to allege all the necessary
elements to determine his punishment range. Second, he contends, the trial court erred when it
overruled his objection to the State's strikes of all of the African-American jurors from his jury
panel. We affirm.
      The indictment charging Mack with the delivery of cocaine reads: He "did then and there
intentionally and knowingly deliver to SHAWN WILLIAMS a controlled substance, namely
cocaine of less that two-hundred grams, including any adulterants and dilutants, by actually
transferring, said controlled substance." Mack asserts that there is no provision in the Texas
Controlled Substances Act that provides for a range of punishment for delivery of "less that two-hundred grams." Thus, he argues, the indictment was fundamentally defective. However, Mack
waived any defect in the indictment by failing to object to it before the trial. See Tex. Code
Crim. Proc. Ann. art. 1.14(a) (Vernon Supp. 1992); Rodriguez v. State, 799 S.W.2d 301, 302
(Tex. Crim. App. 1990). We overrule the first point.
      Mack is African-American. The State peremptorily struck three African-Americans (Jones,
Whitfield, and Cashaw). Mack asserts that the trial court erred by overruling his objection to the
State's strikes of the three African-American jurors from his jury panel on the ground that the
State's strikes were racially based. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90
L.Ed.2d 69 (1986). At the Batson hearing, the prosecutor testified that he struck Cashaw because
Cashaw had a friend who sold drugs to an undercover officer and because the prosecutor had
prosecuted Cashaw's first cousin on a drug charge. The prosecutor further testified that she struck
Whitfield because Whitfield had a brother who had a federal conviction for forgery. Whitfield
further indicated that she possibly knew the defendant. Jones, according to the State, was struck
because she indicated that her husband had been convicted for unlawfully carrying a weapon.
      These reasons are facially race-neutral. See DeBlanc v. State, 799 S.W.2d 701, 713 (Tex.
Crim. App. 1990), cert. denied, ——U.S.——, 111 S.Ct. 2912, ——L.Ed.2d—— (1991) (jurors
knew the defendant or his family); Sims v. State, 768 S.W.2d 863, 865 (Tex. App.—Texarkana
1989), pet. dism'd, improvidently granted, 792 S.W.2d 81 (Tex. Crim. App. 1990) (juror's
kinship with a person who has trouble with the law). Considering the voir dire and the record of
the Batson hearing, Mack has not shown that the court's finding was clearly erroneous. See
Whitsey v. State, 796 S.W.2d 707, 726 (Tex. Crim. App. 1989) (on rehearing). Point two is
overruled.
      We affirm the judgment.

                                                                                     BOB L. THOMAS
                                                                                     Chief Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed October 30, 1992
Do not publish



ion that even if he
continued the trial until May 10 he did not believe the attorneys for either side would want Boykin
on the jury. Barron and Cannon both agreed that they would not. The court then ruled that he
would declare Boykin "disabled" and proceed with the trial with only eleven jurors.
          In his first point of error Taylor argues the trial court erred in overruling the motion for
mistrial he made after the court dismissed Boykin from the jury. Within this single point of error
Taylor raises several issues. They are: (1) whether the trial court was without discretion to permit
the trial to proceed with only eleven jurors because Texas law requires twelve in all felony cases;
(2) whether Boykin was "disabled" as provided by statute; and (3) whether the court erred in
dismissing Boykin because she only wanted the trial to be continued to a time when she could
concentrate on the case again, not to be dismissed altogether.
          In his brief, Taylor refers to three separate statutory provisions that apply to the first issue. 
They are: Tex. Gov't Code Ann. § 62.201 (Vernon 1988), which provides that "[t]he jury in
a district court is composed of 12 persons, except that the parties may agree to try a particular case
with fewer than 12 jurors"; Tex. Code Crim. Proc. Ann. art. 33.01 (Vernon 1989) which
provides, in part, that "[i]n the district court, the jury shall consist of twelve qualified jurors"; and 
Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 1995), which reads, in relevant part:
Not less than twelve jurors can render and return a verdict in a felony case. It must
be concurred in by each juror and signed by the foreman . . . [H]owever, when
pending the trial of any felony case, one juror may die or be disabled from sitting
at any time before the charge of the court is read to the jury, the remainder of the
jury shall have the power to render the verdict; but when the verdict shall be
rendered by less than the whole number, it shall be signed by every member of the
jury concurring in it.

Taylor contends that these provisions are in conflict and that section 62.201 should control because
it was allegedly the most recently enacted.


 With section 62.201 controlling, asserts Taylor, he
was entitled to twelve persons on his jury notwithstanding any contrary provisions in article
36.29(a).
          When a general statute and a more detailed enactment are in conflict, the latter will prevail,
regardless of whether it was passed prior to or subsequently to the general statute, unless it
appears that the legislature intended to make the general statute controlling. Tex. Gov't Code
Ann. § 311.026 (Vernon 1988); Ex Parte Smith, 849 S.W.2d 832, 834 (Tex. App.—Amarillo
1992, no pet.). Article 36.29(a) is a specific statute addressing the issue of whether a felony trial
may proceed with less than twelve jurors when one of them becomes "disabled" within the
meaning of the statute before the charge is read to the jury. Section 62.201 and article 33.01 are
general statutes, relating to how many jurors are supposed to sit in trials in the district courts. 
Nothing in either section 62.201 or article 33.01 indicates that the legislature intended them to
control over article 36.29(a). Accordingly, article 36.29(a) controls and the trial court did not err
in permitting the case to proceed to trial with only eleven jurors. There is no merit to Taylor's
arguments in this first issue.
          In the latter two issues, Taylor complains of the court's declaration that Boykin was
disabled and its consequent dismissal of her from the jury. Under article 36.29(a), a trial court
may declare a juror disabled not only in situations where he is physically injured, but also if he
is suffering from any mental or emotional condition which hinders his ability to perform his duties
as a juror. Landrum v. State, 788 S.W.2d 577, 578 (Tex. Crim. App. 1990) (per curiam). The
determination of whether a juror should be declared disabled is within the sound discretion of the
court. Id. Here, there was evidence that Boykin was emotionally distraught after learning that
her son had been recently killed. Boykin, herself, stated that she did not believe she would be able
to concentrate on the case for at least another week. Furthermore, the trial court was not bound
by Boykin's statement that she believed she might be able to return to the jury within a week. The
court was within its discretion both in finding that Boykin was presently disabled and that she
would continue to be disabled for an indefinite period of time, which justifies the court's decision
not to continue the case until a later date. Thus, the court was authorized to continue with the trial
under article 36.29(a) with only eleven jurors. Taylor's latter two issues under his first point of
error are also without merit. His first point is overruled.
          In his second point Taylor argues the trial court erred in permitting the prosecutor to make
an improper comment during his closing argument. At the close of the guilt-innocence stage, the
prosecutor commented, "[Taylor] was intoxicated the night before [the killing] and he probably
was still intoxicated when he got up and then drank --". Taylor's objection that "[t]here [was] no
evidence of that" was overruled.
          There are four permissible areas of jury argument: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answers to arguments from the defense; and (4) pleas
for law enforcement. Willis v. State, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989), cert. denied,
498 U.S. 908, 111 S.Ct. 279 (1990). Taylor does not specify which portion of the above-quoted
comment from the prosecutor to which he objects, whether the allegation of Taylor being
intoxicated the night before the killing, the allegation that he was probably intoxicated the next
morning, the allegation that he drank alcohol that next morning, or all of the above. There is
direct evidence in the record that Taylor was intoxicated the night before the killing and that he
drank alcohol on the morning of the killing; therefore, these comments were proper summations
of the evidence. With regard to the prosecution's assertion that Taylor was probably intoxicated
when he awoke on August 1, there was testimony that Taylor drank beer all day long on July 31,
was intoxicated when he went home at around 2:00 or 3:00 in the morning on August 1, and
awoke after sleeping only five hours. Under these facts, the prosecutor's comment that Taylor
was probably intoxicated when he awoke on August 1 was a reasonable deduction from the
evidence. Cantu v. State, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992) (holding that counsel is
generally afforded wide latitude in drawing inferences from the record, as long as such inferences
are reasonable and offered in good faith), cert. denied, — U.S. —, 113 S.Ct. 3046 (1993). 
Taylor's second point is overruled.
          In his third point of error, Taylor argues that the prosecutor injected improper statements
into his closing argument at the end of the punishment phase of the trial. Taylor contends that the
prosecutor (1) improperly asserted that Taylor was ineligible for probation unless he demonstrated
remorse; (2) offered his opinion on whether Taylor should be eligible for probation; (3)
commented on the applicability of the parole law; and (4) offered other personal opinions about
Taylor's appropriate punishment. None of these allegedly improper comments were objected to
either during the trial or by a post-trial motion.
          As a general rule, there must be a timely, proper, and specific objection to the prosecutor's
complained about jury argument in order to preserve the complaint for appellate review purposes. 
Tex. R. App. P. 52(a); Miller v. State, 741 S.W.2d 382, 391 (Tex. Crim. App. 1987); Karnes v.
State, 873 S.W.2d 92, 101 (Tex. App.—Dallas 1994, no pet.). An exception to the general rules
exists when the prosecutor's argument so infects the trial with unfairness as to make the resulting
conviction a denial of due process. Miller, 741 S.W.2d at 391. We have reviewed the complained
of arguments and find that they do not rise to the level of a denial of due process. His third point
of error is overruled.
          In his fourth point of error Taylor asserts the trial court erred in overruling his objection
to the Allen charge given the jurors when they informed the court they were unable to reach a
unanimous decision on punishment. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154 (1896).
          An Allen charge is a supplemental instruction to a deadlocked jury essentially stating that
the jurors should examine the questions submitted to them with candor and a proper regard and
deference for the opinions of each other and decide the case if they can conscientiously do so. Duc
Vu v. State, 750 S.W.2d 8, 9 (Tex. App.—Texarkana 1988, pet. ref'd) (citing Allen, 164 U.S.
492, 17 S.Ct. 154; 23 Tex.Jur.3d Criminal Law § 2897 (1982)).


 Every charge, however, that
instructs the jury to continue their deliberations after they inform the court that they are
deadlocked is not necessarily an Allen charge. See Muniz v. State, 573 S.W.2d 792, 794 (Tex.
Crim. App. 1978). To be an Allen charge, there must be some language bringing pressure to bear
upon the jury to reach a unanimous verdict. See id; see also Montoya v. State, 810 S.W.2d 160,
167 (Tex. Crim. App. 1989).
          The coercive language that constitutes an Allen charge, however, does not necessarily
render the charge an improper means of compelling a verdict. Duc Vu, 750 S.W.2d at 9. A
number of factors may operate to prevent the charge from becoming unduly coercive, including
the length of time the jury had been deliberating when they notify the court they are deadlocked
and the amount of coerciveness indicated in the charge. The primary factor to be weighed,
however, is whether the court incorporates any cautionary language in the charge that the minority
jurors should not do violence to their consciences in considering whether to join the majority vote
of their co-jurors. See Dodd, 753 S.W.2d at 521; Duc Vu, 750 S.W.2d at 9.
          The charge given in the instant case reads in full:
You are instructed that it is not appropriate for the Court to communicate privately
with the jury. If you are ultimately unable to reach a unanimous decision, it will
be necessary to declare a mistrial, then another jury will be empaneled to consider
the same evidence which you have considered. You should continue your
deliberations in an effort to reach a unanimous decision.

(Emphasis added.) Taylor objected, requesting that the italicized portion of the charge be deleted. 
The trial court overruled the objection.
          In his brief Taylor asserts that the charge issued by the court was deficient because it failed
to include any cautionary language that the jurors should not violate their consciences in
attempting to agree upon a unanimous verdict. Jackson v. State, 753 S.W.2d 706, 711-12 (Tex.
App.—San Antonio 1988, pet. ref'd); Griffith v. State, 686 S.W.2d 331, 333 (Tex.
App.—Houston [1st Dist.] 1985, pet. ref'd). The State argues that Taylor's argument on appeal
does not comport with his objection to the trial court and, therefore, his complaint is waived. 
Tex. R. App. P. 52(a); Garcia v. State, 887 S.W.2d 862, 874 (Tex. Crim. App. 1994).
          We first note that the court's charge was, indeed, an Allen charge. The italicized portion
of the charge could only have had the effect of pressuring the jury to reach a unanimous verdict;
this language transformed the charge from a completely innocuous charge into an Allen charge. 
Taylor's objection to the use of the italicized portion of the charge reveals that he disapproved of
the court's intention to bear pressure upon the jury; in other words, he objected to the court's
intention to issue an Allen charge. Undeniably, Taylor did not inform the court that he objected
to the omission of any cautionary language from the charge, but, because the cautionary language
is inextricably entwined to the elements of what constitutes an Allen charge, Taylor's objection
was broad enough to encompass the argument he makes on appeal. Tex. R. App. P. 52(a). 
Therefore, we find his complaint was preserved at the trial court. Id.
          Having found that the complaint was preserved, we will now consider whether the court
erred in issuing the charge. In reviewing an Allen charge, the appellate court must evaluate its
potential for harmful coercion of the jurors, followed by an evaluation of any harm caused by the
error. Tex. R. App. P. 81(b)(2); Duc Vu, 750 S.W.2d at 9. The charge issued by the court came
over three hours after the jury began deliberating and lacked any of the cautionary language
usually included to temper the coercive aspects of the charge. Furthermore, as stated above, the
italicized portion of the charge necessarily had the effect of coercing the jurors to reach a
unanimous verdict. Accordingly, we find that the charge was unduly coercive.
          We next evaluate whether any harm came from the charge. Id. Factors we will consider
include the level of coercion present in the charge, whether there is any evidence that some of the
jurors were coerced, and the amount of time that passed following the issuance of the charge
before the jury returned its verdict.
          The level of forcefulness in the charge's coercive language was not unduly severe; it
merely informed the jury that another jury would need to be empaneled to consider the same
evidence if this jury was unable to reach a unanimous verdict. See Griffith, 686 S.W.2d at 332-33
(stronger charge that implied to the jurors that their oath required them to reach a unanimous
verdict did not constitute harmful error). Nothing else in the record indicates that any juror was
coerced by the instruction given. No affidavits or testimony were presented from any jurors to
indicate that he was in any way influenced. See id. There was also no indication in the record
that the jury came back with a unanimous verdict within a short amount of time the charge was
issued. See id. Accordingly, we conclude no harm came from this error, and Taylor's fourth
point is overruled.
          In his fifth point Taylor complains the trial court erred in denying the motion for mistrial
he lodged as a consequence of the court's issuance of the above-quoted Allen charge. In his
motion, he asserted that the jury had been deliberating for more than three hours, that it was
unlikely the jury would be able to reach a unanimous decision, and, therefore, a mistrial was in
order.
          The substance of an appellant's complaint on appeal must comport with his objection to the
trial court; if it does not, the complaint cannot be considered by the appellate court because it was
not preserved for review. Tex. R. App. P. 52(a); Garcia, 887 S.W.2d 862, 874. Taylor's
objection does not comport with his argument on appeal. Taylor's argument in his fifth point is
the same one he raises in his fourth point. His argument on appeal fails to comport with his
complaint to the trial court. Tex. R. App. P. 52(a); Garcia, 887 S.W.2d at 874. Therefore, his
complaint is not preserved and his fifth point of error is overruled.
          Taylor asserts in his sixth point that the trial court erred in allowing the prosecution to ask
a witness for the defense, Edith Stroad, during the punishment phase of the trial if she knew that
Taylor had been arrested for driving while intoxicated in March 1974 and April 1975. Taylor
objected that the two DWI arrests were too remote to be used to impeach Stroad's testimony of
Taylor's good character. The trial court overruled the objection.
          In his brief, Taylor contends the trial court erred in allowing the questions to be asked
because only bad acts that result in criminal convictions may be used to impeach a character
witness during the punishment phase. Once more, Taylor's argument on appeal does not comport
with his objection to the trial court. Tex. R. App. P. 52(a); Garcia, 887 S.W.2d at 874. 
Accordingly, his complaint is waived and we overrule his sixth point.
          Taylor argues in his seventh point of error the trial court erred in permitting the
prosecution to ask Stroad, again during the punishment phase, a question about another extraneous
offense. The relevant portion of the trial is quoted below:
[PROSECUTOR]: Have you heard or did you know that Joe Taylor was arrested for
driving while intoxicated both --
 
CANNON: Your honor, it's have you heard. It's not do you know.
 
[PROSECUTOR]: It's do you know to the opinion and have you heard to general
reputation.
 
. . . 
 
[PROSECUTOR]: Did you know that in 1988 in Jewett that [Taylor] assaulted an
individual named Kevin Newcomb?
 
STROAD: No, I did not.
 
[PROSECUTOR]: Did you know at that same time that he fired several shots at Kevin
Newcomb?
 
CANNON: Judge, that's still . . . asking do you know, and that's assuming that it's correct
and that's just an assumption on the part of the [S]tate and we object to it because of that.

          THE COURT: Overruled.

Taylor's objections to the trial court were based upon the form of the prosecution's impeachment
question; i.e., whether the question should be phrased in either the "Did you know" or the "Have
you heard" format. Taylor's objection reveals that he disapproved of the "Did you know" format
because, implicit in that form of a question, is allegedly an assumption that Taylor had actually
done the bad act the prosecution was referring to. Taylor apparently preferred the "Have you
heard" form because it supposedly lacks this inherent assumption.
          Taylor's arguments on appeal involve the propriety of admitting into evidence the
extraneous offense of Taylor's alleged firing of several shots at Kevin Newcomb. These
arguments have nothing to do with the proper form of the prosecution's impeachment questions
to Stroad. Because his arguments on appeal do not comport with his objections to the trial court,
his complaints in his seventh point of error were not preserved for review. Tex. R. App. P. 52(a);
Garcia, 887 S.W.2d at 874. His seventh point is overruled.
           In his eighth point Taylor argues the trial court erred in failing to schedule a hearing on
his motion for new trial and in permitting it to be overruled by operation of law. Tex. R. App.
P. 31(d),(e)(3). Taylor alleged in his motion, which was supported by an accompanying affidavit
from one of the jurors, that a new trial was in order because the jury had improperly considered
the effect of the parole laws on Taylor's sentence in assessing the proper punishment for him.
          Rule of Appellate Procedure 31(c)(1) provides:
An accused shall present his motion for new trial to the court within ten days after filing
it, unless in his discretion the trial judge permits it to be presented and heard within 75
days from after date sentence is imposed or suspended in open court.

Tex. R. App. P. 31(c)(1). Unless the accused obtains permission from the court to present his
motion at a later date within the seventy-five day time period mentioned in Rule 31(c)(1), his
complaint is untimely if he fails to present his motion for new trial to the trial court for
consideration within ten days of its filing. Price v. State, 840 S.W.2d 694, 696-97 (Tex.
App.—Corpus Christi 1992, pet. ref'd); Enard v. State, 764 S.W.2d 574, 575 (Tex.
App.—Houston [14th Dist.] 1989, no pet.). There is nothing in the record to indicate either that
Taylor presented his motion to the trial court or that the trial court gave him permission to present
the motion at some time during the seventy-five day period. Therefore, we conclude the motion
was not timely presented and the court committed no error in permitting it to be overruled by law. 
Taylor's eighth point is overruled.
          In his ninth and final point, Taylor contends the facts elicited at his trial are insufficient
to support his conviction for voluntary manslaughter. At the end of the guilt-innocence stage of
the trial, the court charged the jury on both murder and the lesser-included offense of voluntary
manslaughter.


 The jury convicted him only of voluntary manslaughter. Taylor maintains that,
because there was no evidence adduced at trial of sudden passion, an element of voluntary
manslaughter, the evidence was legally insufficient to support his conviction.
          Taylor, however, failed to object to the court's charge. In failing to object to the charge
on the lesser-included offense, Taylor is estopped from complaining on appeal that the evidence
failed to establish all the elements of the lesser offense. Scott v. State, 867 S.W.2d 148, 154 (Tex.
App.—Austin 1993, no pet.); Tamez v. State, 865 S.W.2d 518, 519-20 (Tex. App.—Corpus
Christi 1993, pet. ref'd). Therefore, his ninth point is overruled.
          The judgment is affirmed.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed September 29, 1995
Do not publish